THE STATE, EX REL. SULLIVAN, APPELLEE, *v.* VILLAGE OF
MIDDLEBURG HEIGHTS ET AL., APPELLANTS.[*]

---

[*]Motion to certify the record overruled, November 15, 1961.

(No. 25366—Decided May 11, 1961.)

*Messrs. Barragate, Gottermeyer, Fahrenbach & DeGrandis,* for appellee.

*Mr. Albert M. Heavilin,* law director, and *Mr. Roland A. Baskin,* for appellants.

KOVACHY, P. J.  This is an appeal on questions of law from a judgment entered in the Court of Common Pleas of Cuyahoga County wherein the Mayor of the village of Middleburg Heights was commanded to reduce to writing the charges upon which William Sullivan was demoted from Captain to Patrolman of the village Police Department and to file the same with the legislative authority of the village; and the legislative authority was commanded to provide William Sullivan with a hearing in compliance with Sections 733.35 and 733.36 of the Revised Code, resulting from the allowance of a writ of mandamus in an action therefor instituted by relator, appellee herein, William Sullivan, against Middleburg Heights village, its mayor and members of council.

Respondents, appellants herein, for their assignment of error claim, in the main, that the trial court was in error in commanding them to comply with Sections 733.35 and 733.36, Revised Code, in attempting to demote the relator from captain to patrolman.

It appears from the record that the village of Middleburg Heights is a noncharter municipal corporation duly organized

and existing under and pursuant to the laws of Ohio; that on January 28, 1952, the council passed an ordinance (No. 1952-10) which provided for the appointment of a captain of police from the full-time regular membership of the police department; that, in accordance with such provision of the ordinance, the mayor, on March 28, 1952, arranged with the chief of police to promote relator, William Sullivan, a duly appointed, full-time, regular member of the police department of the village, to such position of captain of police, which promotion the council approved on April 14, 1952; and that on March 22, 1960, the relator was demoted from the position of captain of police to his former position of full-time regular member of the police department by the chief of police with the approval of the mayor.

Respondents contend that the position of captain of police provided for in Ordinance No. 1952-10 was created by the council of the village under the authority of the home-rule provision of the Constitution of the state of Ohio, Section 3, Article XVIII; that general laws passed by the Legislature dealing with the police department of a village have no application; and that the demotion of the relator from captain to patrolman was according to the provisions set forth in Ordinance No. 1952-10 and, therefore, valid.

Relator maintains that the village council derived its authority to create the position of captain of police in Ordinance No. 1952-10 from the general laws enacted by the Legislature for the creation of a police department of a village and that as a consequence the removal of the captain from office could only be effectuated in the manner provided by such general laws and that any method of removal in the ordinance that is inconsistent or at variance with the method set forth in the general laws is invalid and of no effect.

Section 2, Article XVIII of the Constitution of Ohio provides:

"General laws shall be passed to provide for the incorporation and government of cities and villages; * * *"

The Legislature of Ohio has provided for a police department of a village in Section 737.15 *et seq.*, Revised Code. The sections pertinent here are:

Section 737.15. "Each village shall have a marshal, designated chief of police, appointed by the mayor with the advice

and consent of the legislative authority of the village, who is an elector thereof, and who shall continue in office until removed therefrom as provided by Sections 733.35 to 733.39, inclusive, of the Revised Code. In case of the removal of a marshal or chief of police of a village, an appeal may be had from the decision of the legislative authority to the Court of Common Pleas to determine the sufficiency of the cause of removal. Such appeal shall be taken within ten days from the finding of such legislative authority.''

Section 737.16. ''The mayor shall, when provided for by the legislative authority of a village, and subject to its confirmation, appoint all deputy marshals, policemen, night watchmen, and special policemen. All such officers shall continue in office until removed therefrom for the cause and in the manner provided by Section 737.15 of the Revised Code.''

Section 737.17. ''All appointments made under Sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.''

Section 737.18. ''The marshal shall be the peace officer of a village and the executive head, under the mayor, of the police force. The marshal, and the deputy marshals, policemen, or nightwatchmen under him shall have the powers conferred by law upon police officers in all villages of the state, and such other powers, not inconsistent with the nature of their offices, as are conferred by ordinance.''

Section 2 of Ordinance No. 1952-10 reads:

''The chief-of-police and the *other members of the police department* shall be appointed by the mayor, subject to the confirmation of the council, *for the time and in the manner provided by Sec. 4384 G. C.* [now Section 737.15, Revised Code]. * * * *All vacancies* hereafter arising in the membership of the police department shall be filled promptly and *in the manner above provided for original appointments.* * * *'' (Emphasis ours.)

Section 3 of the ordinance reads:

"The chief and the other members of the police department shall have *the powers and the duties prescribed by the statutes of the state of Ohio,* and such other powers and duties as shall be prescribed by ordinance from time to time. * * *" (Emphasis ours.)

And Section 4 reads:

"* * * *No removals from the membership of the police department shall be made except in the manner provided by the statutes of Ohio, particularly Section 4384, General Code* [now Section 737.15, Revised Code]." (Emphasis ours.)

These sections of Ordinance .No. 1952-10 clearly indicate that the council, in passing this ordinance, fully intended to install a police department in accordance with the general laws of Ohio, specifically Section 737.15 *et seq.,* Revised Code.

The provisions with respect to the captain of police are found in Sections 2 and 3 of Ordinance No. 1952-10 and read:

"* * * A captain of the police shall be appointed from the full time regular membership of the police department by the chief of police with the approval of the mayor, and may be demoted at any time to the full-time regular membership in the department when the chief, with the approval of the mayor, shall deem it advisable for the good of the department, and thereupon such vacancy shall be filled in the same manner as herein provided for an original appointment to such office of captain of police."

Section 3 also states:

"* * * *The captain of the police shall,* in addition to his usual duties as a member of the police department, *assist the chief and the mayor in their supervision and management of the police department,* in such manner as the chief or the mayor shall order from time to time." (Emphasis ours.)

Rules and regulations duly adopted by the council authorize an "acting chief" under subsection b of rule 2, with the following language:

"During the absence from the village, or incapacity of the chief of police *the next ranking officer* in the division shall become the acting chief of police, and during such time he shall be vested with all of the authority of the chief of police." (Emphasis ours.)

It is obvious from the above that the duties prescribed in

Ordinance No. 1952-10 for the captain of police and the provisions in the rules and regulations for an acting chief describe a person who is to act as a deputy to the marshal designated chief of police. Designating such person a captain of police instead of a deputy marshal is consistent with designating the marshal, in accordance with Section 737.15, Revised Code, a chief of police. Since Sections 737.15 and 737.16, Revised Code, are *in pari materia*, the council had implicit authority to designate the deputy marshal by some office that was in harmony with the designation chief of police, because it would be incongruous to call an officer who is the acting chief of police a deputy marshal. It is consistent in the public mind to have a police department made up of a chief of police, captain and patrolmen.

In *Morris* v. *Roseman*, 162 Ohio St., 447, paragraph two of the syllabus reads:

"An Ohio municipality which has not adopted a charter for its government, as authorized by Section 7, Article XVIII of the Constitution of Ohio, must, in the passage of its legislation, follow the procedure prescribed by the statutes enacted pursuant to the mandate of Section 2, Article XVIII of the Constitution."

It seems beyond question that the position of captain of police in reality is that of a deputy marshal. Counsel for the appellants in their brief concede that the duties of the office were such as would be carried out by a deputy marshal. The village, under Section 737.16, Revised Code, had the power to and did appoint the relator a deputy marshal when he was promoted to the position of captain of police, which position is subject to all provisions of the general laws with respect to the members of a police department of a village.

It necessarily follows then that provisions of Ordinance No. 1952-10 which are inconsistent with the provisions of Section 737.15 *et seq.*, Revised Code, are invalid and of no effect.

Section 737.17, Revised Code, provides that all appointments made under Sections 737.15 and 737.16, Revised Code, shall be probationary and *none shall be final until* the appointee has satisfactorily served such period and that "at the end of the probationary period *the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon* and he may, with the concurrence of the legislative authority, remove or finally appoint the employee." (Emphasis ours.)

In *State, ex rel. DeMatteo*, v. *Allen, Mayor*, 170 Ohio St., 375, the Supreme Court held that compliance with Section 737.17, Revised Code, is a mandatory duty of a village.

The relator, having been appointed and having served as a deputy marshal designated captain of police for many months past the six months' continuous service, is entitled to have the mayor "transmit to the legislative authority of the village a record of such employee's service with his recommendation thereon and * * * [the mayor] may, with the concurrence of the legislative authority, remove or finally appoint the employee."

The portions of Section 2 of Ordinance No. 1952-10, which provide that the captain of police shall be appointed by the chief of police and removed from office "at any time * * * when the chief, with the approval of the mayor, shall deem it advisable for the good of the department," are invalid and of no effect and cannot be employed as the means of "demoting" such officer, because the same contravene the applicable provisions of the Revised Code.

Section 737.16, Revised Code, requires that "the mayor shall, when provided for by the legislative authority of a village, and subject to its confirmation, appoint all deputy marshals, * * *." Under the undisputed facts, this is what, in substance, was done by the village, since the ordinance provided for the position and the council approved of the appointment of the relator, which appointment, though made by the chief of police, was arranged for by the mayor.

Section 737.16, Revised Code, does not in any way state the qualifications required for the office, so that under Section 3, Article XVIII of the Constitution of Ohio, the council had the power to provide that a captain of police or deputy marshal shall be appointed from the full-time regular membership of the police department. Likewise, since Section 737.17, Revised Code, only provides for a method of removal or final appointment of the employee, the council of the village in its ordinance, again under the power bestowed upon it by Section 3, Article XVIII of the Constitution of Ohio, had the right to provide that such captain "may be demoted * * * to the full time regular membership in the department," when removed from his position as provided by Section 737.17, Revised Code.

The Supreme Court of Ohio in *Village of Perrysburg* v.

*Ridgway, a Taxpayer*, 108 Ohio St., 245, states the law in its syllabus as follows:

"3. The above constitutional grant of power to municipalities [Section 3, Article XVIII] is 'self-executing,' in the sense that no legislative action is necessary in order to make it available to the municipality."

"5. The grant of power in Section 3, Article XVIII, is equally to municipalities that do adopt a charter as well as those that do not adopt a charter, the charter being only the mode provided by the Constitution for a new delegation or distribution of the powers already granted in the Constitution. (*State, ex rel. City of Toledo*, v. *Lynch, Auditor*, 88 Ohio St., 71, 102 N. E., 670, 48 L. R. A. [N. S.], 720, Ann. Cas., 1914D, 949, disapproved upon the proposition that a charter is a prerequisite to the exercise of home-rule powers under Section 3, Article XVIII.)"

Paragraph four of the syllabus of *City of Mansfield* v. *Endly*, 38 Ohio App., 528, reads:

"4. Municipality's constitutional powers of 'local self-government' authorize measures pertaining exclusively to municipality, in which people of state have no interest (Article XVIII, Section 3, Constitution)."

See, *State, ex rel. Cutright*, v. *Akron Civil Service Commission*, 95 Ohio App., 385, paragraph five of the syllabus.

Accordingly, from the above, the attempted demontion of the relator from captain of police or deputy marshal to patrolman was contrary to law and therefore invalid and of no effect. Under the law, the relator still serves a probationary period as deputy marshal, called captain of police, is entitled to the perquisites of that office, and continues to serve until or unless he is demoted to patrolman or is finally appointed deputy marshal, called captain of police, as provided in Section 737.17, Revised Code, and Ordinance No. 1952-10 as discussed and indicated herein.

Relator in his petition prays, *inter alia*, that the relator be provided "with a hearing * * * in compliance with Sections 733.35 and 733.36 of the Ohio Revised Code, *together with any and all such other orders and relief as may be proper and necessary in the premises.*" (Emphasis ours.)

The judgment of the Court of Common Pleas is modified

in part, to command Andrew Rosbough, mayor of the village, to transmit to the council of the village a record of the relator's services as deputy marshal designated captain of police with his recommendation thereon and he may, with the concurrence of the legislative authority, remove or finally appoint relator as deputy marshal designated captain of police of the village police department, in accordance with Section 737.17, Revised Code, and the judgment, as modified, is affirmed.

*Judgment modified and, as modified, affirmed.*

HURD, J., concurs.

SKEEL, J., dissenting. I dissent from the judgment herein entered.

The facts, as shown by the stipulations, the testimony of the relator, and exhibits, show that the relator was employed as a part-time patrolman of the village on September 18, 1950. He became a full-time policeman on December 18, 1950. On January 14, 1952, he was advanced to the rank of captain of police by the chief of police, which advancement in rank was confirmed or approved by the mayor.

Prior to the advance in rank, the village council passed an ordinance creating the office of captain of police and spelling out the duties to be assumed by such officer. The relator was advanced in rank by the authority of this ordinance. It provides that a captain of police shall be appointed from "the full-time regular membership of the police department by the chief of police, with the approval of the mayor, and may be demoted at any time to the full-time regular membership in the department when the chief, with the approval of the mayor, shall deem it advisable for the good of the department * * *."

On March 22, 1960, the relator was relieved of the rank of captain and returned to a full-time policeman in the regular Police Department of Middleburg Heights by order of the chief of police, with the approval of the mayor, upon the authority of the ordinance above quoted. It is the claim of the relator, supported by the judgment of the Court of Common Pleas, that he could not be demoted from the rank of captain and returned to the regular police force as a policeman without charges being filed against him in writing under the provisions of Section 733.35, Revised Code, and a trial had before the legislative au-

thority of the village as provided by Section 733.36, Revised Code.

The power of a village to appoint a marshal (chief of police) and deputy marshals and policemen is provided for by Sections 737.15 and 737.16, Revised Code.

Section 737.15 provides that each village shall have a marshal, "designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village, who is an elector thereof, and who shall continue in office until removed therefrom as provided by Sections 733.35 to 733.39, inclusive, of the Revised Code. * * *''

There is also a provision for an appeal from an order of removal by the decision of the legislative authority to the Court of Common Pleas.

Under the provisions of Section 737.16, the mayor shall, when provided for by the legislative authority of the village and subject to its confirmation, appoint all deputy marshals and policemen. All such officers shall continue in office until removed for cause and in the manner provided by Section 737.15 of the Revised Code.

The appointment of the relator to the rank of captain of police was under the authority of the ordinance, the appointment being made by the chief of police, with the approval of the mayor. The appointment was not made as provided by Section 737.16, nor is there an office known as captain of police provided for under that section. Such rank was created by ordinance and did not increase the number of full-time policemen as provided under section one of the ordinance. This ordinance does not provide for the appointment of a deputy marshal. The effect of that part of the ordinance under which relator was given the rank of captain was merely to confer a special status on a full-time policeman appointed by the chief of police, with the approval of the mayor, without competitive examination as would be required under civil service for officers of a city police department. The chief of police, under the authority of Section 737.18, Revised Code, is the executive head of the police department and in that capacity could have directed the relator to perform the extra administrative duties defined by the ordinance without the authority of the ordinance. The conferring of such duties by the ordinance added nothing to the status of the relator as a policeman of the police department of the village.

There is a marked distinction between the police department of a city and a village. Their status (policemen of a city) is fixed under separate sections of the Revised Code. Section 737.05, Revised Code, provides that the police department of a city shall be composed of a chief of police and such other *officers*, patrolmen and employees as may be provided by ordinance. (Emphasis added.) Section 143.27, Revised Code, as amended (128 Ohio Laws, 1064) effective November 2, 1959 (under civil service), provides:

"* * * In the case of the suspension, *demotion* or removal of * * * any member of the police * * * department of a city an appeal on questions of law and fact may be had from the decision of the municipal civil service commission to the Court of Common Pleas of the county in which such city is situated. * * *" (Emphasis added.)

In villages (municipal corporations with less than five thousand inhabitants) (Section 703.01), the police department (not under civil service) consists of a chief of police (marshal) (Section 737.15) and deputy marshals and policemen (Section 737.16), when provided for by legislative authority, and appointed by the mayor with the approval of the legislative authority. There is no provision indicating any difference in rank between a deputy marshal and a policeman. There is also no provision for "officers" in the organization of the police department of a village, as that term is understood in the organization of a city police department, nor is there any provision in Sections 733.35 and 733.36, Revised Code, for a trial upon charges for a reduction or demotion in rank of a member of a village police department. These sections provide for the removal of an officer from the service if he has been charged with being guilty, in the performance of his official duty, of bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality or habitual drunkenness. The only power of the legislative body, upon trial of charges (when properly presented), if the member of the department is found guilty, is to remove him from service. This clearly indicates that the only distinction in rank in the police department of a village is between the marshal (chief of police) and that of deputy marshals, policemen, night watchmen, and special policemen, when such officers are provided for by ordinance.

Under the home-rule amendment to the Constitution, the village was empowered to pass an ordinance conferring additional duties on a full-time policeman appointed to such work by the chief of police, with the approval of the mayor, and to further provide that such appointee may be relieved of such duties and returned to the regular duties of a full-time policeman at the will of the chief of police with the consent of the mayor. If the relator is dependent on the ordinance as the basis for his appointment as captain of police, he must also be bound by its terms as to his removal from such office.

The record shows that the appointment of the relator to the office, created by ordinance, of captain of police was accomplished by following out the requirements of the ordinance—that is that the appointment was made by the chief of police with the approval of the mayor. An exhibit intended to demonstrate the manner of his appointment is in the record in the form of a letter directed to the relator. It is dated March 28, 1952, and presumably signed by the chief of police. The approval of the mayor is indicated, as well as that of the council, by marginal notes. The approval of the council was not required by the ordinance, and the fact that such notation is in the letter is of no significance to the relator's case.

Conceding only for the purpose of considering the law of the case that the appointment of the relator to the office of captain must be construed as making him a deputy marshal (although it is clear from the record that this was not intended) and that there is a difference in the rank of deputy marshal and policeman (no such difference being found in the statutes), upon such contention, and the admitted facts, the relator was never legally appointed to such office.

Section 737.17, Revised Code, provides:

"All appointments made under Sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such em-

ployee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.''

The record clearly shows that the last act of the village authorities (the chief of police, the mayor and the legislative authority) with reference to the appointment of the relator as captain occurred on January 14, 1952, which was the date he was first made captain under the ordinance. No act of final appointment after the probationary period of six months has been taken. The serving of a probationary period and the subsequent final appointment or removal without trial is an absolute requirement for continued tenure of an officer in a village police department, such proceeding being provided without doubt to take the place of civil service requirements as testing the officer's ability to fill such office.

In the case of *State, ex rel. DeMatteo, v. Allen, Mayor*, 170 Ohio St., 375, the relator had been appointed chief of police of the village of Hubbard on October 1, 1956, he having been a patrolman of that village since August 1951. On April 7, 1958, more than eighteen months after his provisional appointment at a regular meeting of the village council, when the question of his final appointment was considered, the mayor refused to recommend his appointment as chief of police under the requirements of Section 737.17, Revised Code. The council of six members was equally divided on the question of giving legislative approval of his final appointment, and the mayor, under Section 733.24, Revised Code, then voted (to break the tie) against approval. The relator sought to compel his appointment as chief of police and his contention, as stated by the Supreme Court was: ''* * * that the respondent [mayor] had no right to cast the deciding tie-breaking vote that resulted in the demotion of the relator.'' On page 380 of the (*Per Curiam*) opinion, it is stated:

''For those which do not and which elect to remain within the general framework of village government as provided by the general statutes, the General Assembly has established a simple form of government which in large measure revolves around the village mayor. As pointed out, he is, or at times may be, virtually a seventh member of council. That it was intended that the mayor exert a potent force in all police matters in a village

is further evidenced by the provision in Section 737.18, Revised Code, that 'the marshal shall be the peace officer of a village and the executive head, *under the mayor*, of the police force.'

"The relator, never having been recommended for permanent appointment as chief of police, has not shown a clear right to the extraordinary remedy of mandamus, and the Court of Appeals properly denied the writ."

Under the law of that case, the relator's claim that he cannot be "demoted" without trial upon charges before the legislative body of the village is without merit. This is the only issue pleaded as the basis of relator's claim, that is that he was not afforded a trial on charges before the council. Under Section 737.17, Revised Code, he was not entitled to such trial even if he was appointed a deputy marshal until he has been finally appointed after his probationary period. As has been indicated, under the undisputed facts of this case, the office of deputy marshal was never created by legislative authority, so that the claim that he was removed from that office without trial is not supported by the record.

The petition does not claim the relator was appointed deputy marshal. The words "deputy marshal" are not found in the petition. The prayer of the petition is as follows:

"Wherefore, relator prays that a Writ of Mandamus be issued, directing the respondent, Andrew Rosbough, to reduce to writing the charges upon which the Relator was demoted from rank of captain to patrolman and to file the same forthwith with the legislative authority of said respondent village, and that the respondents [names of all the councilmen] * * * as the legislative authority thereof, provide the relator with a hearing upon said charges at their next regular meeting, all in compliance with Sections 733.35 and 733.36 of the Ohio Revised Code, together with any and all such other orders and relief as may be proper and necessary in the premises."

Under the undisputed facts, the relator is not entitled to the relief prayed for since he was never legally appointed to any office defined in the statutes other than patrolman, which he now holds under Sections 737.16 and 737.17, Revised Code. The record is perfectly clear that the village authorities never intended to appoint him deputy marshal. They are charged with knowledge of the law. Both the chief of police and the relator

had been appointed to their respective offices as provided by Section 737.17. The allegations of the petition are that they were legally appointed. Certainly the mayor and the councilmen would not have neglected final approval as required by law for eight years if they had any notion they were appointing a deputy marshal. They were acting and intended to act under the ordinance and this is the view of the relator as is shown by his petition.

The claim is that the village of Middleburg Heights was not authorized to pass the ordinance creating the office of captain of police and providing for his reduction in rank to patrolman in a manner said to be in conflict with Sections 733.35 and 733.36, Revised Code, because the village has not adopted a charter by the vote of the people conferring such authority on the legislative branch of the village. If this be so, as before indicated, the entire ordinance must fall, not just the provisions for demotion of a captain of police appointed under the authority of the ordinance to patrolman by order of the chief of police with the approval of the mayor and without legislative authority, and thus the office of captain of police was never created.

The suggestion that if he were, in fact, appointed as a deputy marshal from the rank of patrolman, his removal as deputy marshal would return him to his former office, is unsound. No such result could obtain where the only provisions of Sections 737.16 and 733.36, Revised Code, provide for "removal" not demotion, nor, as has been said, is there any suggestion that the rank of deputy marshal is above that of patrolman. Certainly, one could not hold in abeyance the office of patrolman while holding the office of deputy marshal. There is no legislative authority for such claim.

The relator is still a policeman of the village of Middleburg Heights, and since he has not been removed from that office to which he was appointed under the authority of Section 737.16, Revised Code, the writ seeking to return him to the office of captain of police, which title he held under the ordinance at the will of the chief of police, with the approval of the mayor, should have been denied by the trial court.

For the foregoing reasons, the judgment of the trial court, issuing the writ, should be reversed and final judgment entered for the appellant.