TOTH, APPELLEE, *v.* VILLAGE OF ELMWOOD PLACE ET AL., APPELLANTS.

(No. C-830787—Decided August 15, 1984.)

*Swain & Hardin* and *Jay Hill,* for appellee.

*Lee Bortz,* for appellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County, Ohio.

The appellee, Paul R. Toth, is a lieutenant in the police force of the village of Elmwood Place, which, together with certain individual members of the village council, are the appellants herein. The instant matter arose when Toth was removed from his position with the village police force as the result of what was said to be a financial emergency in the village. Toth then commenced the instant action, requesting a writ of mandamus directing the village to restore him to his former position on the police force, an injunction to prevent any further action to deny him employment, and a declaration of his right to uninterrupted and continued employment with the defendant police department. In due course, the parties each filed a motion for summary judgment supported by affidavits and memoranda. On September 22, 1983, the trial court entered its judgment denying appellants' motion for summary judgment, and granting that of the appellee, stating, *inter alia:*

"The Court finds that the Chief of Police of the Village of Elmwood Place was without authority to terminate the active employment of the relator-appel-

lant-plaintiff [Paul Toth] and that any attempt to delegate authority to the Chief of Police to allow him to terminate the active employment of the relator-appellant-plaintiff would be, and was, an unlawful and void act."

The appellee was accordingly ordered restored to his former position, with back pay and benefits. From this final order, the appellants bring the appeal, asserting, in their two assignments of error, that the trial court erred in denying their motion for summary judgment and further erred in granting that of appellee. We do not agree, and affirm the judgment of the court below.

The dispositive facts in this case may be taken from three of the affidavits submitted in support of the appellants' unsuccessful motion. In the first, the affidavit of the village Clerk, Ray Baker, recited the village's financial emergency, concluding with the following:

"8. On April 5, 1983, Council voted to lay off four employees, including one police officer.

"9. Council also voted to let Chief Wilkymacky decide which officer should be laid off."

The affidavit of the vice mayor of council, Emmitt Spears, similarly recites, in pertinent part:

"2. On April 5, 1983, at the regular Council meeting he voted to lay off four employees, including one police officer. The Council vote was four to two in favor of this action.

"3. Affiant states that the employees were laid off because of a substantial reduction in Village receipts and the necessity ti [sic] reduce overhead.

"4. Chief Wilkymacky was authorized by Council to choose which of the two police officers with the least seniority should be laid off."

The final affidavit, that of the Chief of Police, Stanley Wilkymacky, recites the following:

"2. At the April 5, 1983, Village Council Meeting, Council voted to lay off four Village employees, including one police officer, because of money difficulties.

"3. Affiant asked Council which officer should be laid off and was advised that the officer with the least seniority should be laid off.

"4. Affiant advised Council that the two officers with the least seniority were hired at the same time and Council voted to let Affiant decide which officer should be laid off.

"5. Affiant, after Council adjourned, decided to lay off plaintiff Toth."

The actual termination of Toth was effected by a letter from Wilkymacky, as follows:

"Lieut. Toth:

"You are hereby notified that pursuant to a motion passed on April 5, 1983 by the majority of council of the Village of Elmwood Place that a police officer with the least seniority be laid off, that, you, being such police officer, are hereby laid off effective this date April 6, 1983. Please turn in all your equipment.

/s/ Chief Stan Wilkymacky"

These submissions constitute essentially all the relevant facts.

It is notable that both here and in the trial court, the parties elected to fight their legal battles largely on irrelevant grounds. The appellants, pointing out the detailed procedure provided by R.C. 124.321 et seq. for reducing the work force of civil servants employed by cities, assert that there is no statutory analogue provided for villages, and that such authority as exists may be found in or inferred from Section 3, Article XVIII of the Ohio Constitution, which provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police,

sanitary and other similar regulations, as are not in conflict with general laws."

At least two problems are manifested in any reliance upon this authority. First, there is absolutely nothing in the record to indicate the adoption by the appellants of any "regulation," charter, ordinance, resolution, or other lawful enactment governing the reduction of the village work force analogous to R.C. 124.321 *et seq.,* or otherwise. Secondly, if the "motion" of council to let the chief of police decide which employee to lay off is argued to be such a "regulation," then it is clearly in conflict with general law. See *infra.*

The appellee, on the other hand, argues at some length that the procedure for removing a village police officer is exclusively governed by R.C. 737.16 and 737.19, with which procedure the village quite clearly did not comply. However, a reading of these latter statutes makes it manifest that they relate to the suspension or removal of village police officers "for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause." R.C. 737.19(B). The hearing procedure and disciplinary authority obtained in the balance of the statute makes it apparent that the statute is addressed to the solution of disciplinary problems, not to the quite separate problem of layoffs due to economic necessity. The sections of the code in question are simply inapplicable to the instant problem.

We conclude instead that R.C. 731.10 provides the statutory fundament for the procedure required in the instant case. Quite obviously, a village must have authority to hire employees if it is to perform its municipal function; also quite obviously, if it finds itself, as the result of future untoward events, without funds or prospects of compen-sating such employees, it must have authority to remove such of them as will relieve the financial emergency. This is recognized by R.C. 731.10, which provides, in relevant part:

"* * * The legislative authority may provide such employees for the village as it determines, *and such employees may be removed at any regular meeting by a majority of the members elected to such legislative authority.*" (Emphasis added.)

The authority of the village thus to employ and to remove its employees is unequivocally *that of council alone;* the statute is quite explicit in its grant of authority, and such grant must be held to be nondelegable. Had the council of the appellant village, having found the financial emergency, terminated the appellee's position and employment by resolution lawfully enacted by a majority of its members, the matter would presumably have been unexceptionable. See *Alatorre* v. *Hamilton* (June 29, 1984), Butler App. No. CA-83-08-0101, unreported, as to pertinent cites. What it could *not* do was what it instead chose to do: delegate its authority to the chief of police.

Finally, the appellants argue that trial court's order will cause the village to be liable for money it does not have and/or has not and cannot lawfully appropriate for the purpose, citing R.C. 5705.41 and 705.19. The argument, however understandable the dilemma it reflects, cannot prevail. The trial court correctly held that the appellants acted in violation of law in terminating the services of the appellee, and correctly fashioned the appropriate remedy for the wrong done the appellee. However sympathetic or understanding we may choose to be, we have no authority to alter or mitigate the result that necessarily follows from our foregoing determination.

The appellants' assignments of er-

ror are overruled and the judgment is affirmed.

*Judgment affirmed.*

SHANNON, P.J., PALMER and BLACK, JJ., concur.