BEDINGHAUS *v.*
VILLAGE OF MOSCOW ET AL.

(No. 85-CV-0891—Decided
March 2, 1987.)

Court of Common Pleas of
Clermont County.

*Gregory L. Adams,* for plaintiff
James L. Bedinghaus.
*Dexter Bastin,* for defendants.

RINGLAND, J. This matter came
for trial to the court on November 21,
1986, based upon a complaint filed by
plaintiff, and defendants' counter-
claim. Evidence was adduced and the
court took the matter under advise-
ment pending memoranda filed by
counsel. The matter proceeded on
plaintiff's complaint under the second,
third, fourth, sixth and seventh claims,

being actions for breach of contract, estoppel, the tort of wrongful discharge, a declaratory judgment under R.C. Chapter 737, and an action for damages under the state application of Section 1983, Title 42, U.S. Code, respectively. Claims one and five of plaintiff's complaint had previously been dismissed pursuant to an entry on a motion for summary judgment. Defendants did not proceed by way of evidence on their counterclaim.

The court finds that in or about May 1984, the mayor, village solicitor, and two council members of defendant village met with the plaintiff at the mayor's office to discuss the possibility of employing plaintiff. Plaintiff had previously been employed as a chief of police with defendant village but due to the apparently improper discharge of the former Police Chief, Dennis Skeen, the village was required to reinstate Chief Skeen and terminate plaintiff. Apparently the village and Chief Skeen were later again involved in litigation, and Chief Skeen was again dismissed by the village. As a result, during this discussion the plaintiff insisted that he be guaranteed a position with the village in case former Chief Skeen's pending litigation was successful and the village was forced to rehire Skeen. At the time of the discussion, plaintiff was employed in a full-time position with Bethesda Hospital. The mayor along with the two council members verbally "guaranteed" the plaintiff that absent incompetent service or improper behavior, he would have a position with the village of Moscow. In order to accomplish this they indicated that they would employ plaintiff not only as chief of police but as "Captain of Police." Plaintiff agreed and as a result council met and hired him as acting chief of police as well as captain of police pursuant to an ordinance duly voted and acted on in July 1984. In reliance upon the representations made by the mayor and the two council members, plaintiff quit his position with Bethesda Hospital, giving up benefits of his employment and accepting the position of acting Chief of Police and Captain of Police for the village of Moscow.

Subsequently, in June 1985, the political make-up of the village council changed. At the next regularly scheduled council meeting, on June 6, 1985, the new council decided to dismiss pending formal charges against Skeen and reinstate him as village of Moscow Chief of Police. Plaintiff, who was present at the meeting, indicated that he could not continue in such a situation and would therefore resign. While it is not clear when he intended to present his resignation, the facts indicate that he was to be married on the next day and leave on a two-week honeymoon and intended to present his resignation after his return; further evidence indicates that he was entitled to at least two weeks' vacation. In any event, the transcript of the meeting minutes indicates that plaintiff informed council that he was resigning and withdrew from the meeting. Both the transcript and the testimony of witnesses indicate that a member of council requested plaintiff to put his resignation in writing, which plaintiff apparently agreed to do. Later that evening, after council had adjourned, the mayor met with plaintiff and requested plaintiff to reconsider, at which time plaintiff verbally withdrew his resignation and submitted the same to the mayor in writing on the next morning, June 7.

On June 8, 1985, a meeting was called by four members of the village council for purposes of considering the resignation of plaintiff. Before they could do so, plaintiff again withdrew his verbal resignation.

The following colloquy took place:

"LARRY HAYWARD: I'd like to

point out that the Mayor is not, the Village Mayor, Gene Holland, is not here, but he was informed of these proceedings. If he chooses not to be here. The purpose of this meeting is to accept (the exact?) resignation of the Village Solicitor and also serves as the Tax Commissioner of the Village of Moscow. I did hear Jim Bedinghaus [plaintiff] says he resigned so, I take it, that's official.

"LOUISE LONGWORTH: I have it on tape.

"JIM BEDINGHAUS: I'm withdrawing the resignation.

"LONGWORTH: I have it on tape that . . .

"HAYWARD: I can't withdraw a (inaudible) resignation.

"LONGWORTH: I have it on tape that Geoff resigned.

"BEDINGHAUS: Can I speak?

"HAYWARD: As far as I am concerned, yeah. I mean, what in the else could I do.

"BEDINGHAUS: Okay. I'm here to formally withdraw that resignation, the verbal resignation. The Mayor's already been sent a letter to that effect. What you did the other night is illegal. You, you put a man back in as Chief of Police.

"RICHARD O'NEILL: Yeah, That's his job.

"BEDINGHAUS: Orders, the last orders that I heard on it was a Court order had to be, come down to put him back in as Chief. You didn't have a quorum because you chaired it, and you voted and you should not have had a vote. So what you did was illegal, so now you have two Chiefs of Police.

"O'NEILL: It's all over.

"BEDINGHAUS: You do with that.

"O'NEILL: Now Jim . . .

"HAYWARD: I make a motion that we accept the resignation of Jim Bedinghaus, please?

"O'NEILL: I second that.

"HAYWARD: He did resign, I don't think it's going to do anybody . . .

"O'NEILL: We got the witnesses and we got the thing written up here, so,

"HAYWARD: We did have a quorum (inaudible). The Mayor walked out of the meeting that was in progress.

"O'NEILL: The meeting was never ended 'til we ended it, it was a legal meeting.

"HAYWARD: I'm not a chairman, nor a vice-mayor, or anything else. I'm a council member. I do have the right to conduct the business. Just because the Mayor walks out doesn't tend to make it any, he does not have a right to adjourn the meeting by walking out. So, does someone second that motion?

"O'NEILL: I second the motion.

"HAYWARD: All in favor.

"LARRY WEST: Yeah.

"HAYWARD: Larry West? Doc O'Neill?

"O'NEILL: Aye.

"HAYWARD: Larry Hayward's in favor. Louise Longworth?

"LONGWORTH: Yea.

"HAYWARD: Motion carried to accept the resignation of Jim Bedinghaus.

"O'NEILL: Okay, now you've got a motion or copy here to that effect.

"LONGWORTH: Why wasn't the Mayor here if he has the letter? It was a special meeting and this is the second one he has not been to.

"BEDINGHAUS: I wasn't here. I wasn't notified of the meeting until late last, late last night.

"O'NEILL: You are not part of this community. Why should you be notified? You left this community very definitely. You made a point. We've got all the witnesses, including the Mayor at the table and including the people who were in the audience here. So we can't have people coming in and changing their minds, their minds one

time they split and the next time they don't. Either make up your mind or don't make up your mind.

"BEDINGHAUS: I ain't arguing with you.

"O'NEILL: Well, I am arguing with you.

"BEDINGHAUS: I'm not arguing with you.

"O'NEILL: I'm arguing with you.

"BEDINGHAUS: You can argue with my attorney about that.

"O'NEILL: I didn't discuss this thing.

"BEDINGHAUS: You kept it going.

"O'NEILL: I'm telling you what I feel about it. You have your say, I'll have mine and that's the end of it."

Council voted to accept the former verbal resignation of plaintiff despite his withdrawal of it, although it appears that the acceptance of his resignation was as to his position as police chief only, not captain. Thereafter plaintiff absented himself for his honeymoon. Upon arriving back in Moscow, plaintiff was contacted by the new solicitor of the village of Moscow and was informed that both positions were terminated; he was not to work at all. As a result, plaintiff filed this action against the village of Moscow, its mayor, and various council members for redress of the damages that he has sustained as a result of their actions.

Council's wrestling over the issue of whether plaintiff resigned is simply irrelevant to the determination of the claims herein. As noted above, the village council accepted plaintiff's "resignation" only as to his position as police chief, not as captain of police. Indeed Ordinance 1484, passed by the council to create the position of captain of police for plaintiff, also made him acting police chief only during the pendency of disciplinary action against former Police Chief Skeen. When the new council dropped all charges

against Skeen, plaintiff's concurrent employment as police chief was terminated. However, he was entitled to remain in his employment as police captain, and defendants' termination of him in that position was a wrong for which he should be afforded a remedy.

Employment relationships in Ohio are generally at will. *Henkel* v. *Educational Research Council of America* (1976), 45 Ohio St. 2d 249, 74 O.O. 2d 415, 344 N.E. 2d 118; *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 2d 100, 23 OBR 260, 491 N.E. 2d 1114. However, that is only a prima facie description of the employment relationship. *Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1, 15 OBR 22, 472 N.E. 2d 765. Plaintiff here contends that his employment was protected both by the provisions of R.C. Chapter 737, and by the promises previously made him by village officials.

As to the first point, plaintiff requests a declaration by the court that R.C. 735.15 and 737.171, which provide a village marshal or police chief with certain procedural safeguards, are applicable to him. As already noted, plaintiff's position as police chief was in an "acting" capacity only, with the implicit understanding that it was to continue only during the pendency of the disciplinary charges against former Chief Skeen, and if Skeen was reinstated that plaintiff's role as acting police chief would terminate. Thus, the protections afforded by R.C. 737.15 and 737.171 were not due plaintiff in his temporary capacity.

Plaintiff also argues that R.C. 737.16 and 737.19, which provide similar safeguards to deputy marshals or policemen, should control here, R.C. 737.16 provides that:

"The mayor shall, when provided for by the legislative authority of a village, and subject to its confirmation, appoint all deputy marshals, policemen, night watchmen, and special

policemen. All such officers shall continue in office until removed therefrom for the cause and in the manner provided by section 737.19 of the Revised Code.* * *"

R.C. 737.19(B) gives the village marshal the exclusive right to suspend officers for "* * * incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause." Upon a suspension the mayor is given a right of review of the charges against any officer, and may uphold the suspension, reduce the officer's rank, or remove him or her completely, subject to the officer's right to appeal to council and to the common pleas court. Plaintiff contends that the statute ensures his continued employment and that he can be suspended or removed only for a "reasonable or just cause."

In *Toth* v. *Elmwood Place* (1984), 20 Ohio App. 3d 188, 20 OBR 232, 485 N.E. 2d 735, the Hamilton County Court of Appeals, in upholding the layoff of a village police officer due to budgetary constraints, held that these statutes are addressed only to the solution of disciplinary problems. The court further held that R.C. 731.10 allows a village council to remove employees at any regular meeting, and that a layoff due to a lack of funds could be lawfully effectuated under that authority. A like holding was made in *Fraternal Order of Police of Manchester* v. *Manchester* (Dec. 15, 1981), Adams App. No. 368, unreported; and in *Monroe* v. *Smith* (Jan. 28, 1985), Warren App. No. CA84-08-050, unreported. This latter decision, binding upon this court, upheld the removal of a village police officer by the village mayor and council for non-disciplinary reasons under R.C. 737.17.

Whether council may effectuate such a removal on its own is another question. R.C. 731.10 provides in part:

"* * * The legislative authority may provide such employees for the village as it determines, and such employees may be removed at any regular meeting by a majority of the members elected to such legislative authority."

Moscow Municipal Code Section 32.02, patterned after the above statute, reads in part:

"The council may provide employees for the village as it determines, and employees may be removed at any regular meeting by a majority of the members elected to the council * * *."

(It might be noted here that council sought to remove plaintiff at a special, not a regular meeting.) These provisions seem to be in conflict with R.C. 737.17, however. That section provides that:

"All appointments made under sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee."

Plaintiff's position as police captain was clearly an appointment made under R.C. 737.16 and therefore subject to the above section. The village mayor apparently never recommended either final appointment or removal for plaintiff at the end of a six-month probationary period, or later. There is no evidence here that the mayor, with council, either removed or finally appointed plaintiff. In interpreting this section and R.C. 737.15, former Attor-

ney General C. William O'Neill opined that the concurrence of both the mayor and council is required to either finally appoint or remove the officer involved, unless a removal for cause is undertaken pursuant to R.C. 733.35 to 733. 39 (now superseded as to village police officers by R.C. 737.171 and R.C. 737.19). 1954 Ohio Atty. Gen. Ops. No. 4268. As R.C. 737.15 and 737.16 are identical in all relevant respects, the same result would no doubt be reached here.

The Lorain County Court of Appeals reached a contrary holding in *Harvey* v. *Brumback* (1960), 113 Ohio App. 45, 17 O.O. 2d 45, 177 N.E. 2d 70. The court there held that the police chief, neither finally appointed nor removed by the mayor and council pursuant to R.C. 737.17, could be discharged by the mayor under his authority as the executive head of the village and its police force.

Reading these provisions *in pari materia,* the court finds that R.C. 737.17, being the more specific statute, will govern over R.C. 731.10. Both sections were enacted by the General Assembly in 1954. It was apparently its intent for R.C. 737.10 to govern village employment, except for police and fire personnel, for which other provisions were created, *i.e.,* R.C. 737.17. The court agrees with the *Toth, Manchester* and *Monroe* courts that R.C. 737.171 and 737.19 deal only with disciplinary matters. The village could have sought to discharge plaintiff for cause under those sections, in which case council would have had a clearly delineated role to play in the proceedings. However, council's role in other removal proceedings is limited to concurring or disagreeing with the mayor's recommendation. In summary, while police officers may still be removed for reasons other than just cause, R.C. 737.17 is the guide for such removals, and provides no role for

council in initiating such proceedings. Thus, council's removal of plaintiff here was unjustified and contrary to law.

Plaintiff further contends that the promises made to him by village officials guaranteeing his position during good service constituted a contract, the breach of which should afford him a remedy. An employer and employee can choose to base the employment relationship on a contract which abrogates employment at will. *Helle, supra; Jones* v. *East Center for Community Mental Health, Inc.* (1984), 19 Ohio App. 3d 19, 19 OBR 85, 482 N.E. 2d 969; *Stearns* v. *Ohio Savings Assn.* (1984), 15 Ohio App. 3d 18, 15 OBR 39, 472 N.E. 2d 372. The contract need not be express; the facts and circumstances of a given case may indicate that an enforceable agreement was entered into. *Jones.* "* * * [O]ral representations have been recognized in some situations as comprising components or evidence of the employment contract." *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 104, 19 OBR 261, 264, 483 N.E. 2d 150, 154, citing *Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211, 7 OBR 272, 454 N.E. 2d 1343, and *Helle, supra.* Plaintiff has proven that he was promised employment during good behavior and efficient service. It is clear that when the parties to a private employment relationship contract to maintain the employment during satisfactory service and to discharge only for just cause, then such a contract is an exception to the employment-at-will doctrine, and a plaintiff can recover for a breach of the agreement. *Hedrick, supra.* However, unlike private parties, a village has limited contractual powers, *Beachwood* v. *Ohio Cas. Ins. Co.* (1934), 47 Ohio App. 212, 17 Ohio Law Abs. 323, 191 N.E. 797. Municipal corporations cannot be sued in quasi-

contract. *Fox Towing, Inc.* v. *Hamilton* (Dec. 31, 1986), Butler App. No. CA86-03-036, unreported; *Cuyahoga Cty. Hosp.* v. *Cleveland* (1984), 15 Ohio App. 3d 70, 15 OBR 99, 472 N.E. 2d 757; *Kimbrell* v. *Seven Mile* (1984), 13 Ohio App. 3d 443, 13 OBR 532, 469 N.E. 2d 954; *Montz Sales & Service, Inc.* v. *Barberton* (1983), 10 Ohio App. 3d 157, 10 OBR 209, 460 N.E. 2d 1159. A village is a municipal corporation and thus cannot be held liable in quasi-contract. *Beachwood, supra; Eastlake* v. *Davis* (1952), 94 Ohio App. 71, 51 O.O. 279, 114 N.E. 2d 627. See, also, 21 Ohio Jurisprudence 3d (1980), Counties, Townships, and Municipal Corporations, Sections 809-812. Thus, plaintiff's breach of contract claim must be denied.

Plaintiff's wrongful discharge tort claim must also be denied. The Ohio Supreme Court has not yet recognized such an action, and has stated that employers have no duty of good faith and fair dealing towards employees. *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144; *Mers, supra.* Employees can be discharged, even when it would constitute gross or reckless disregard of their rights. *Phung, supra; Fawcett, supra.*

Many other jurisdictions have held that the employment-at-will doctrine has a "public policy" exception. See *Phung, supra,* at 104, 23 OBR at 263-264, 491 N.E. 2d at 1117-1118, fn. 1 (C. Brown, J., dissenting), and cases cited therein. Under that rule, if the discharge is held to have violated a clear public policy, it will be remedied. Ohio has yet to recognize that exception. *Dadas* v. *Prescott, Ball & Turben* (N.D. Ohio 1981), 529 F. Supp. 203. "Ohio has not deviated from the traditional rule of law," *i.e.,* employment at will without a public policy exception. *Wolf* v. *First Natl. Bank* (C.P. 1980), 20 O.O. 3d 262-263. Just last year, the Ohio Supreme Court reaffirmed that stance in *Phung, supra.* There, the court affirmed the granting of an employer's Civ. R. 12(b)(6) motion. The plaintiff had pled he had been discharged for informing his employer, a waste disposal business, of its violations of various laws and its societal obligations. The court noted that those allegations failed to state a violation of a sufficiently clear public policy. The court seemed to leave the door open for finding such an exception in the future but noted that Ohio has not yet recognized any public policy exceptions. The case *sub judice* does not present a situation from which such an exception could be drawn either. The village has violated no clearly defined public policy as expressed by the legislature or otherwise. For purposes of the tort claim, the discharge would thus seem to be protected by the employer's right to discharge even in derogation of an employee's rights.

That is not to say plaintiff must be left without a remedy. He has argued that the doctrine of estoppel should be applied, and this court agrees. The Ohio Supreme Court held in *Mers, supra,* that promissory estoppel may be applied in a proper case to remedy a wrongful discharge. Where an employer makes a promise upon which he should reasonably expect an employee to rely, and the employee does rely on it and acts upon that reliance to his detriment, estoppel may be applied to afford a remedy for a discharge, even when the employment was at will. *Phung; Jones;* and *Hedrick, supra.* The remedy may be limited as justice requires and used only if injustice can be avoided by its application. *Jones, supra,* at 23-24, 19 OBR at 89, 482 N.E. 2d at 974, fn. 3, citing 1 Restatement of the Law 2d, Contracts (1981) 242, Section 90, and Comment thereto.

Estoppel may be invoked against municipal corporations, *Mt. Vernon* v.

*State* (1905), 71 Ohio St. 428, 73 N.E. 515; *Shapely* v. *Norwood Earnings Tax Bd. of Appeals* (1984), 20 Ohio App. 3d 164, 20 OBR 198, 485 N.E. 2d 273; *Baxter* v. *Manchester* (1940), 64 Ohio App. 220, 18 O.O. 77, 28 N.E. 2d 672, and may thus be invoked against a village. The facts show that plaintiff relied on the promises of continuing employment made him, and acted upon such reliance to his detriment, by giving up his employment with Bethesda Hospital and its attendant benefits. The court will invoke the doctrine of promissory estoppel here so that defendants are not "* * * permitted to deny the existence of such facts * * *," *Hedrick, supra,* at 214, 7 OBR at 275, 454 N.E. 2d at 1347, citing *London & Lancashire Indemn. Co. of America* v. *Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136, 152, 147 N.E. 329, 334, and thereby escape liability. Such action is taken to avoid injustice.

Plaintiff further contends that he was deprived, under color of state law, of a right, privilege, and/or immunity, namely his employment, protected by the United States Constitution and by Section 1983, Title 42, U.S. Code. He contends that he was deprived of necessary due process protections, as he was not afforded a hearing and an opportunity to present evidence to challenge his discharge.

Plaintiff's argument that R.C. Chapter 737 was applicable to him has already been rejected by the court. Such statutes, when they give public employees the right to continued employment absent good cause for discharge, can confer property rights in continued employment upon the employees. *Valan* v. *Cuyahoga Cty. Sheriff* (1985), 26 Ohio App. 3d 166, 26 OBR 385, 499 N.E. 2d 377; *Jackson* v. *Kurtz* (1979), 65 Ohio App. 2d 152, 19 O.O. 3d 105, 416 N.E. 2d 1064. Such a property interest is protected against arbitrary infringement by the Due Pro-

cess Clause of the Fourteenth Amendment, and actionable under Section 1983. See *Cleveland Bd. of Edn.* v. *Loudermill* (1985), 470 U.S. 532; *Perry* v. *Sindermann* (1972), 408 U.S. 593. However, in the absence of an applicable statute or other facts showing that a public employee has a legitimate claim of entitlement to a position, no property interest in public employment exists. *Walton* v. *Montgomery Cty. Welfare Dept.* (1982), 69 Ohio St. 2d 58, 23 O.O. 3d 93, 430 N.E. 2d 930; *Fuldauer* v. *Cleveland* (1972), 32 Ohio St. 2d 114, 61 O.O. 2d 374, 290 N.E. 2d 546. Property rights in employment are not created by the Constitution, but by independent sources such as state law. *Bd. of Regents* v. *Roth* (1972), 408 U.S. 564. Plaintiff has failed to prove the applicability of any such sources here.

Nor has plaintiff claimed that any liberty interest has been impaired by his discharge. Where a person's good name, reputation, honor or integrity is at stake, the due process protections of notice and an opportunity to be heard may be required. *State, ex rel. Kilburn,* v. *Guard* (1983), 5 Ohio St. 3d 21, 22, 5 OBR 81, 83, 448 N.E. 2d 1153, 1155, citing *Wisconsin* v. *Constantineau* (1971), 400 U.S. 433, 437. No charges were filed against plaintiff, nor is there any evidence that he was defamed or that his future employment possibilities were impaired.

While the hearing of June 8 was at best not a model of decorum, such action did not impair any constitutionally protected rights actionable under Section 1983.

The next task this court faces is to calculate the damages to be accorded plaintiff for his unjust dismissal. As his tort claim has been rejected and no malice proven, no punitive damages will be awarded. They are, in the court's opinion, unavailable against defendant village in any event. In the

absence of a statute providing for such an award, punitive damages may not be assessed against a municipal corporation. *Spires* v. *Lancaster* (1986), 28 Ohio St. 3d 76, 28 OBR 173, 502 N.E. 2d 614; *Ranells* v. *Cleveland* (1975), 41 Ohio St. 3d 1, 70 O.O. 2d 1, 321 N.E. 2d 885. Punitive damages are designed to serve as a deterrent and an example. These holdings emphasize that such an award would " 'contravene public policy since the parties who must bear the burden of the punishment are the taxpayers and citizens who constitute the very persons who as a group are to benefit from the public example which the granting of damages is supposed to make of a wrongdoer.' " *Spires,* at 78, 28 OBR at 175, 502 N.E. 2d at 616-617, fn. 2. In addition, it is assumed that elected officials will fulfill their obligations correctly, and that if they do not, the electorate can correct their deficiencies through appropriate measures, such as the use of the ballot box, without recourse to punitive damages awards. *Ranells, supra,* at 6-7, 70 O.O. 2d at 4, 321 N.E. 2d at 888, citing *Chappell* v. *Springfield* (Mo. 1978), 423 S.W. 2d 810, 814. These rationales are likewise compelling when applied to a village as in the instant case. Plaintiff is, however, entitled to some fair measure of relief by way of compensatory damages to compensate him for the detriment he incurred in relying on defendants' promise, and the damages incurred as a result of the discharge. Thus, the court finds that plaintiff suffered a loss to his detriment in reliance on defendants' promise of his accumulated sick leave with his former employer.

Inasmuch as the determination of damages and back pay, if any, may be subject to setoff, this matter will be set for hearing to determine damages. In addition, the court hereby orders plaintiff reinstated to his former position of captain of police. He may choose not to accept such reinstatement in the present circumstances, but, if he does so, he may hold it so long as it exists, unless removed in accordance with law.

The remedies awarded by the court under the doctrine of promissory estoppel may be limited as justice requires. *Jones, supra.* The individual defendants, members of village council, are immune from individual liability to the extent their actions were an exercise of their legislative discretion, and in good faith. It is clear that they felt their actions to be within their legislative authority. As no evidence of bad faith was presented by plaintiff, they cannot be held liable in damages. Thus, the damages assessed against defendants will come from the village, and thus from the taxpayers of the village. The court is thus mindful of the need to balance the plaintiff's legitimate claim to damages with that of the village's citizens to avoid severe economic strain because of the acts of their officials. This order in the court's opinion attempts to fulfill that goal. Plaintiff to set matter for further hearing on the issue of damages accordingly.

*Judgment accordingly.*