To be or not to be the chief of police, that is the question.
Appellant, Donald G. Parker ("Parker"), was formerly the chief of police of appellee, the village of New Paris, Ohio, until he was removed from office by appellee's village council (the "council") on January 3, 1995. Parker appealed his removal to the Preble County Court of Common Pleas. On September 20, 1995, the common pleas court affirmed the decision of the council to remove Parker from office. By entry filed April 29, 1996, we upheld the common pleas court's decision. Parker v. Village of New Paris (Apr. 29, 1996), Preble App. No. CA95-10-024, unreported.
Following Parker's removal from office, the vacancy was filled by appellant, Robert L. Jarrell ("Jarrell"), until May 6, 1996. At the council meeting on that day, the council voted to discharge Jarrell "as Acting or Chief of Police" by a vote of four to one with one abstention. Thereafter, the following colloquy took place:
 Mayor Mary Jane [Thomas]: Also today I was Presented from the People of the Village of New Paris. Theirs [sic] 177 names on this Petition. That would like to see Mr. Parker Reinstated or Re-Hired. At this time I am going to appoint Mr. Parker to be the Chief of Police. I need a Motion from Council.
 Charlene Made the Motion on Whether to Confirm or Deny Mr. Parker as Chief.
Cliff Second [sic] the Motion.
 Davis-Yes, Wallace-Abstains, Roberts-No, Kyle-No, Hankins-Abstains, Captain-Yes
 Mayor Mary Jane: Their [sic] is a Tie, 2-Yes and 2-No's. TIE VOTE. I Say Yes. Parker will be Immediately put on a Chief of Police.
Audience: Why was he (Jarrell) ask to Resign?
 Mayor Mary Jane: Charges will be Brought against him at a Another Date.
Audience: We Can't know Tonight what they are?
 Mayor Mary Jane: No. When I get them wrote [sic] up.
A letter from appellee's mayor, Mary Jane Thomas ("Mayor Thomas"), to the Preble County Sheriff and dated May 6, 1996 states that "[t]his is to inform you that effective immediately Chief Donald Parker has been reinstated to his position." Ordinance 1996-03 signed by Mayor Thomas and dated May 6, 1996 provides in part that:
 WHEREAS, the Council of the Village of New Paris, Ohio believes it to be in the best interest of the Village to re-instate Donald G. Parker to the position of Chief of Police,
 NOW, THEREFORE, be it ordained by the Council of the Village of New Paris, Ohio that Donald G. Parker is hereby re-instated and confirmed to the office of Chief of Police of the Village of New Paris, Ohio, and that all benefits, rights, and amenities due him are returned.
At the council meeting on June 3, 1996, a hearing was held regarding the charges against Jarrell that had prompted his earlier discharge. The council dismissed all charges against Jarrell. Thereafter, a council member made a motion "to rescind councils [sic] action on the reinstatement, rehire, or confirmation of Mr. Donald G. Parker as Chief of Police." Following a discussion between the council and the audience, the council and Mayor Thomas were presented with a petition "demanding the immediate dismissal and any compensation of Donald G. Parker." Subsequently, the council voted to discharge Parker as chief of police by a vote of four to two. Later, the council unanimously voted to make a special meeting as to appellee's need to have someone acting as chief or acting chief of police.
Unable to resolve the confusion caused by council's actions, both Parker and Jarrell appealed to the Preble County Court of Common Pleas (the "trial court") for a judicial determination. On April 18, 1997, the trial court conducted a full evidentiary hearing on Parker's appeal. Jarrell's appeal was submitted to the court on the record and the pleadings only. The record shows that all parties, including Jarrell and his counsel, were invited and given the opportunity to participate in the hearing. By entry and decision filed August 20, 1997, the trial court found that neither Parker nor Jarrell was the duly appointed chief of police.
Both Parker and Jarrell timely filed an appeal. Parker raises one assignment of error, while Jarrell raises three assignments of error, which will be addressed first and out of order.
It is well-established that on an appeal from an administrative decision, a court of common pleas must weigh the evidence in the record to determine whether there exists a preponderance of reliable, probative, and substantial evidence to support the administrative decision. R.C. 2506.04; Dudukovich v. Lorain Met. Housing Auth. (1979), 58 Ohio St.2d 202, 207. If such evidence does not exist, the court of common pleas may reverse, vacate, modify or remand. Id. In determining whether the standard of review prescribed by R.C. 2506.04 was correctly applied by a court of common pleas, an appellate court's inquiry is limited to a determination of whether, as a matter of law, there existed a preponderance of reliable, probative and substantial evidence to support the administrative decision. Id. at 207-208.
In his first assignment of error, Jarrell argues that the trial court erred in "failing to employ the proper standard of review." However, Jarrell fails not only to state which standard of review the trial court erroneously used, but also to set forth that which is suggested as the proper standard of review. Rather, in his analysis under this assignment of error, Jarrell first argues that upon an appeal to the trial court under R.C. 737.171
of the removal of a village marshall, the trial court's only options are to dismiss the charges, suspend temporarily, or order removal from the office. Jarrell then argues that whether he was appointed chief of police or acting chief of police, his removal from office was in violation of R.C. 737.171.
It is well-established that "[e]rrors not separately argued or supported by brief may be disregarded." Meyer v. Chagrin Falls Exempted Village School Dist. Bd. of Edn. (1983), 9 Ohio App.3d 320,328; App.R. 12(A). As the Supreme Court of Ohio stated in Uncapher v. Baltimore Ohio Rd. Co. (1933), 127 Ohio St. 351, "errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." Id. at 356. Jarrell's first assignment of error is overruled.
In his third assignment of error, Jarrell argues that the trial court erred in failing to afford him the opportunity to present evidence of his compliance with R.C. 737.15 as it relates to the physical examination requirement. In its decision, the trial court found that there was no indication that Jarrell was ever asked to or required to pass a physical examination as required under R.C. 737.15. Jarrell contends that absent any testimony or documentation on this issue, and in light of the fact that the April 18, 1997 hearing related solely to Parker's appeal of his second discharge as chief of police, it was error for the trial court to summarily conclude that Jarrell had not complied with the physical examination requirement.
The record shows that Jarrell's case was before the trial court via written argument. In his memorandum filed on February 20, 1997, Jarrell argued that he was properly appointed chief of police under R.C. 737.15 and asked the trial court to find that he was, in fact, appellee's village marshall. Because Jarrell argues that his appointment was made pursuant to R.C. 737.15, we must assume that he was cognizant of the clear and specific mandate in R.C. 737.15 that "[n]o person shall receive an appointment under this section, unless, he has passed a physical examination." Jarrell had the opportunity to present evidence of his physical examination in his memorandum but failed to do so.
At the April 18, 1997 hearing, all parties, including Jarrell and his counsel, were present. While the hearing related to Parker's appeal of his second discharge as chief of police, the record clearly shows that the trial court allowed Jarrell and his counsel to participate in the hearing and that it gave them the "opportunity to be involved in [the] hearing, examine witnesses, and if [Jarrell] chooses to do so, call witnesses." The record shows that Jarrell's counsel cross-examined five of the six witnesses that testified. Significantly, Jarrell's counsel cross-examined appellee's then-mayor, Mary Jane Thomas. Mayor Thomas testified that before she became mayor, she was a council member from May or June 1992 to December 31, 1996. Because Mayor Thomas was a council member in January 1995 when Jarrell was allegedly appointed chief of police, Jarrell had the perfect opportunity to examine Mayor Thomas as to Jarrell's physical examination, yet he failed to do so.
In light of the foregoing, we find that Jarrell had several opportunities to present evidence of his physical examination, but either failed to do so or chose not to do so. Jarrell's third assignment of error is overruled.
In his second assignment of error, Jarrell argues that the trial court abused its discretion in finding that Jarrell was not appellee's chief of police and thus that his discharge was not in violation of R.C. 737.171.
We note at the outset that "abuse of discretion" is not the standard of review prescribed by R.C. 2506.04. As already noted, in determining whether the common pleas court properly applied the standard of review prescribed by R.C. 2506.04, an appellate court's inquiry is limited to a determination of whether, as a matter of law, there existed a preponderance of reliable, probative and substantial evidence to support the administrative decision. Dudukovich, 58 Ohio St.2d at 207-208.
In its decision, the trial court found that Jarrell was not appellee's duly appointed chief of police for the following reasons:
 With respect to Jarrell, there is no record of his appointment having been made with the "advice and consent of council" as is required by ORC Sec. 737.15. Nor is there any indication that Jarrell was ever asked to or required to pass a physical examination let alone that the Village ever saw to it that a report of the examination was properly filed. Beyond that, the documentation which indicates that at least some on council considered Jarrell to be the police chief is confusing in that it is unclear whether he was the police chief or acting police chief.
 Ohio Revised Code Sec. 737.171, which deals with the method of removing a police chief, is not applicable to one who does not properly hold the position. Therefore the improper attempt to remove him is not relevant. Nor is it relevant that a motion was made on 6/3/96 to "get rid of all charges" against him.
 Simply stated a Village that desires to comply with the law that requires it to have a marshal designated as a chief of police must do so according to the dictates of ORC Sec. 737.15. Failure to comply with the clear and simple dictates of this section cannot be corrected by letters referring to a person as a chief of police, by members of council calling him chief of police, or even by efforts to remove him or her that, whether successful or unsuccessful, are improper.
Jarrell contends that the trial court's foregoing findings were erroneous, especially in light of the fact that (1) the issue of his physical examination was never before the court, and (2) while the Ohio Revised Code does not require that the council's "advice and consent" be in written form, such advice and consent to the appointment of Jarrell as chief of police was indeed given by the council as evidenced by Ordinance 1995-13.
We note at the outset that while Jarrell argues he was appointed chief of police in January 1995, the record is in fact unclear and confusing as to whether Jarrell was appointed chief or acting chief of police. The record shows that on January 13, 1995, Jarrell took an oath of office as chief of police. At the council meeting on January 17, 1995, Suzanne Mills, who was then mayor, introduced Jarrell to the council as the chief of police. A letter dated April 10, 1997 from Mills to the trial court states that at that meeting, Mills asked and obtained from the council "their advise [sic] and consent to the appointment" of Jarrell as chief of police. However, the handwritten minutes of that meeting are absolutely devoid of any evidence that Mills ever made such request or that she obtained the council's advice and consent. Nor is there any evidence in the record of any ordinance or resolution from the council specifically appointing Jarrell as chief or acting chief of police.
The record shows that an April 24, 1995 letter from PERS to appellee's clerk inquired about Jarrell's full-time status. The clerk's handwritten annotations on the letter state that Jarrell was only temporary acting chief of police and that he was not working full time. On July 10, 1995, Jarrell wrote a letter to Mills and the council asking them to confirm him as a member of appellee's police department. Jarrell's letter specifically states that he was "not asking to be confirmed as chief only as a member of the NEW PARIS POLICE DEPARTMENT." At the council meeting that same day, the council voted to hire Jarrell as a part-time police officer. Following Mills' request that "council continue Resolution for Jarrell as acting Police Chief," the council voted to continue "Chief Jarrell as acting Police Chief." As already noted, there is no evidence in the record that a resolution appointing Jarrell to the head of the police department was ever made or passed.
At the council meeting on December 4, 1995, upon a proposal by Mills, the council voted to waive appellee's residency requirement for Jarrell as chief of police. Ordinance 1995-13, dated December 4, 1995, states in relevant part that:
 WHEREAS, on Jan 13, 1995, Robert Jarrell was appointed Chief of Police of the Village of New Paris, Ohio by the Mayor with the advice and consent of the Council of the Village of New Paris, and,
 WHEREAS, Robert Jarrell is not a resident of the Village of New Paris, Ohio, and WHEREAS, Ohio Revised Code Section 737.15 and Section 248.02(a) of the Village Administration Code (Ordinance No. 1995-03) require that the Chief of Police shall become a resident of the Village unless such residence requirement is waived by ordinance, and,
 WHEREAS, the Council of the Village of New Paris, Ohio, believes it to be in the best interests of the Village to waive the residency requirement for Robert Jarrell as Chief of Police of the Village[.]
As previously stated, the council voted to discharge Jarrell on May 6, 1996. Subsequently, the charges brought against Jarrell that prompted his discharge were dismissed on June 3, 1996.
Whether the vacancy following Parker's discharge was filled by Jarrell as chief or acting chief of police, the appointment of the head of a village's police department is clearly governed by R.C. 737.15 and 737.17. R.C. 737.15 states that:
 Each village shall have a marshal, designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village, who need not be a resident of the village at the time of his appointment but shall become a resident thereof within six months after his appointment by the mayor and confirmation by the legislative authority unless such residence requirement is waived by ordinance, and who shall continue in office until removed therefrom as provided by section 737.171 of the Revised Code.
* * *
 No person shall receive an appointment under this section after January 1, 1970, unless, not more than sixty days prior to receiving such appointment, he has passed a physical examination, given by a licensed physician, showing that he meets the physical requirements necessary to perform the duties of village marshal as established by the legislative authority of the village. The appointing authority shall, prior to making any such appointment, file with the police and firemen's disability and pension fund a copy of the report or findings of said licensed physician.
R.C. 737.17 in turn states that:
 All appointments made under sections 737.15 and 737.16 of the Revised Code shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.
R.C. 737.171 governs removal proceedings and states in relevant part that "[w]hen the mayor of a village has reason to believe a duly appointed marshall has been guilty of incompetency, he shall file with the legislative authority of the village written charges against such person." (Emphasis added.)
The foregoing language clearly shows that the removal proceedings set forth in R.C. 737.171 only apply to someone who was properly appointed marshall. R.C. 737.15 requires that for someone to be properly appointed marshall, (1) that person must be appointed by the mayor with the advice and consent of the council; (2) the person must have passed a physical examination given by a licensed physician no more than sixty days prior to receiving his appointment, and (3) the appointing authority must, prior to making the appointment file with the police and firemen's disability and pension fund a copy of the report by the licensed physician. R.C. 737.17 in turn clearly requires that for an appointment to become final, the mayor must transmit to the council, at the end of the probationary period, a record of the appointed person's services with his recommendations.
In the case at bar, there is absolutely no evidence that Jarrell ever passed a physical examination prior to being appointed or that a report of his physical examination by the licensed physician was ever filed with the police and firemen's disability and pension fund. Jarrell contends that the issue of his physical examination was never before the trial court because he was denied the opportunity to present evidence on that issue. We rejected such contention when addressing Jarrell's third assignment of error.
Jarrell also argues that Mills' request at the July 10, 1995 council meeting that the council continue the resolution appointing Jarrell as acting chief of police, council's subsequent vote to so continue Jarrell, and Ordinance 1995-13 clearly prove that he was properly appointed by the mayor with the council's advice and consent. We disagree.
While R.C. 737.15 does not specifically require the council's advice and consent to be in written form, the record must show that such advice and consent was in fact given by the council. On July 10, 1995, Mills asked the council to continue the resolution for Jarrell as acting chief of police and the council so voted. However, the record is absolutely devoid of any evidence that a resolution appointing Jarrell was ever made or passed. One cannot continue a resolution which does not exist.
The record is similarly devoid of any evidence of an ordinance appointing Jarrell. Ordinance 1995-13, which does not appoint Jarrell but waives the residency requirement, states that on January 13, 1995, Jarrell was appointed "by the Mayor with the advice and consent of the council." However, the only evidence in the record regarding January 13, 1995 is Jarrell's oath of office. While Jarrell was subsequently presented to the council on January 17, 1995, there is no evidence that Mills ever asked for the council's advice and consent or that she obtained it. As the trial court aptly stated, "a Village that desires to comply with the law that requires it to have a marshall designated as a chief of police must do so according to the dictates of ORC Sec. 737.15." Failure to comply with the clear and simple dictates of R.C. 737.15 cannot be subsequently corrected by a later ordinance, by a mayor's request and a council's vote to continue a person as chief of police, or by the mayor and/or council referring to and calling the person a chief of police.
In light of the foregoing and upon a thorough review of the record, we find that there was no reliable, probative and substantial evidence before the trial court to support the appointment of Jarrell as chief of police. We thus find that the trial court did not err in finding that Jarrell was not appellee's duly appointed chief of police. Jarrell's second assignment of error is overruled.
In his sole assignment of error, Parker argues that the trial court erred in determining that he "was not properly reinstated and not entitled to reinstatement to the position of [chief of police]." In its decision, the trial court found that Parker was not appellee's duly appointed chief of police for the following reasons:
 Parker was properly discharged from the position of chief of police on or about 1/3/95. His discharge was affirmed by this Court and later by the Court of Appeals for Preble County, Twelfth Appellate District on 4/29/96.
* * *
 This Court is of the opinion that once terminated the only method available to the Village to place Parker back into the position of chief of police is by following the dictates of Sec. 737.15. In other words, once properly terminated, Village Council had no authority to reinstate Parker (i.e. reappointment back to the date of termination). Accordingly, even if the action taken by council on 5/6/96 was clearly an effort to reinstate, same would be improper.
 Further, it appears that on 5/6/96, what was in fact accomplished was the attempted appointment of Parker as chief of police, rather than his reinstatement.
* * *
 However, as with Mr. Jarrell, council simply did not follow the dictates of [R.C.] 737.17. There was no physical and report thereof and there is no provision for a probationary period.
 Parker's appointment was simply invalid and the action taken on 6/3/96 to rescind council's action on 5/6/96 was meaningless.
Parker first argues that on May 6, 1996, he was reinstated, and not rehired, as evidenced by (1) the fact that the issue of back pay was discussed on May 6, 1996; (2) the statements made by appellee's solicitor, Steven Hobbs, at the council's June 3, 1996 meeting that Parker was the chief of police; (3) Mayor Thomas' clear desire to reinstate Parker at the May 6, 1996 meeting; and (4) the fact that only the mayor has the authority to appoint a chief of police pursuant to R.C. 737.15.
Contrary to Parker's assertion, R.C. 737.15 does not give the mayor sole authority to appoint a chief of police. Rather, R.C.737.15 clearly mandates that a village marshall shall be "appointed by the mayor with the advice and consent" of the council. (Emphasis added.) While Mayor Thomas' testimony at the hearing clearly indicated her desire to reinstate Parker as chief of police on May 6, 1996, the testimony of four council members clearly indicates that the council was confused and unclear as to what kind of appointment the mayor made on May 6, 1996.
The record shows that at the council's May 6, 1996 meeting, Mayor Thomas was presented with a petition "to see Mr. Parker Reinstated or Re-Hired." She thereafter asked the council for a motion to appoint Parker. A council member made the motion to "Confirm or Deny Mr. Parker as Chief." Following a tie in the council's vote, Mayor Thomas announced that Parker would be immediately "put on" as of police. The record also shows that on May 6, 1996, (1) Ordinance 1996-03 signed by Mayor Thomas reinstated Parker as chief of police, and (2) Mayor Thomas wrote a letter to the Preble County Sheriff notifying him that "effective immediately," Parker was reinstated as chief of police. Another letter dated April 10, 1996 from Mayor Thomas to appellee's then solicitor, Paul E. Holtzmuller, states that it is the decision of the mayor and the village council that Parker be reinstated as chief of police.
While Mayor Thomas clearly intended to reinstate Parker as evidenced by her testimony and the foregoing documents, the council members, with the exception of one, all testified that they believed Parker was rehired on May 6, 1996. Mayor Thomas admitted at the hearing that the motion to confirm or deny Parker was unclear and that the entire colloquy regarding Parker's new appointment was confusing. Mayor Thomas also admitted that her letter to Holtzmuller and Ordinance 1996-03 were not presented to the council and that the council never voted on the ordinance. Again, with the exception of the same council member, all the other council members testified that Ordinance 1996-03 and Mayor Thomas' letters to Holtzmuller and the Preble County Sheriff were neither presented to nor approved by the council.
With regard to the issue of back pay, while it was apparently discussed by the council in open meeting on May 6, 1996, the transcript of the minutes of the meeting is devoid of any reference to the issue. While it may have been discussed, the record clearly shows that the back pay issue was neither resolved nor made an explicit part of the council's motion regarding Parker.
In light of all of the foregoing, we disagree with Parker that on May 6, 1996, he was clearly reinstated. At best, he was reappointed. We are mindful of appellee's solicitor's statements at the council's June 3, 1996 meeting that "[i]n my opinion you have Parker has [sic] your chief" and "in terms of your appointment of Mr. Parker, you reinstated him, not rehired him." However, Mayor Thomas testified that the village solicitor did not speak for the council and that the village solicitor's opinion did not reflect the council's opinion or what the council did on May 6, 1996.
Because Parker was not reinstated on May 6, 1996, his reappointment as chief of police was governed by R.C. 737.15 and737.17. As in the case of Jarrell, there is no evidence in the record that Parker ever passed a physical examination, that a report of the examination was ever filed or that at the end of the probationary period, Mayor Thomas transmitted to the council the record of Parker's service along with her recommendations.
Parker argues, however, that the council had authority to reinstate him. Parker cites R.C. 715.05 and 731.10 and the First Appellate District's opinion in Toth v. Village of Elmwood Place (1984), 20 Ohio App.3d 188, in support of his argument.
We note at the outset that Parker's argument is in direct contradiction with his previous argument that only the mayor had the authority to appoint him as chief of police. R.C. 715.05 provides that "[a]ll municipal corporations may organize and maintain police and fire departments, erect the necessary buildings, and purchase and hold all implements and apparatus required thereof." In light of the Supreme Court of Ohio's holding in Cleveland v. Payne (1905), 72 Ohio St. 347, that this section merely authorizes a municipal corporation to organize and maintain a police department, id. at 353-354, we find that R.C. 715.05 does not give the council the authority or the power to reinstate Parker.
R.C. 731.10 provides in relevant part that "[t]he legislative authority may provide such employees for the village as it determines, and such employees may be removed at any regular meeting by a majority of the members elected to such legislative authority." Interpreting this section in Toth, the First Appellate District held that in the case of a village police officer laid off due to budgetary constraints, the authority of a village to employ and remove its employees was that of the village council alone and such grant of authority was nondelegable. Toth, 20 Ohio App.3d at 190.
In Bedinghaus v. Village of Moscow (C.P. 1987), 41 Ohio Misc.2d 1, however, the Clermont County Court of Common Pleas held that "[r]eading these provisions in pari materia, the court finds that R.C. 737.17, being the more specific statute, will govern over R.C. 731.10. It was apparently [the General Assembly's] intent for R.C. 737.10 [sic] to govern village employment, except for police and fire personnel, for which other provisions were created, i.e., R.C. 737.17." Id. at 6. In 1993, the First Appellate District agreed with the foregoing reasoning and determined that while it held in Toth that the authority to employ village employees was that of the village council alone under R.C. 731.10, "R.C. 737.17 is the more specific statute, however, on the probationary and final appointment of police personnel." Dillingham v. Village of Woodlawn (1993),86 Ohio App.3d 54, 59.
In light of the foregoing, we find that R.C. 715.05 and 731.10
and Toth, as revised by Dillingham, do not give the council the power and authority to reinstate Parker as chief of police. We further find that there was no reliable, probative and substantial evidence before the trial court to support appellee's May 6, 1996 decision to reappoint Parker as chief of police. We therefore hold that the trial court did not err in finding that Parker was not appellee's duly appointed chief of police. Parker's sole assignment of error is overruled.
We note that unless appropriate action in compliance with R.C.737.15 and 737.17 was taken by the mayor and the council during the pendency of Parker's and Jarrell's appeals to this court, appellee has no chief of police.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.