**DILLINGHAM, Appellant,**

**v.**

**VILLAGE OF WOODLAWN et al., Appellees.**

[Cite as *Dillingham v. Woodlawn* (1993), 86 Ohio App.3d 54.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910638.

Decided Jan. 29, 1993.

*Roger R. Chacksfield,* for appellant.

*Louis Lausche,* Village Solicitor, for appellees.

*Per Curiam.*

The plaintiff-appellant, Thomas Dillingham, Jr., appeals from the decision of the trial court denying relief on his complaint for declaratory judgment in an action arising from his termination as a police officer for the village of Woodlawn. On appeal, he asserts two assignments of error: (1) the trial court erred when it concluded that his status with the Woodlawn Police Department was that of temporary employee from May 12, 1989, until January 9, 1990, and (2) the trial court erred when it concluded that the mayor had the power to remove him

without the concurrence of the village council. We reject the first assignment of error, but find the second to be well taken and thus reverse.

## I

Prior to setting forth the factual background of this case, we note that the record contains references to certain joint trial exhibits, some of which appear, by reference, to be extremely significant in terms of recreating the series of events which led to Dillingham's employment and termination. However, the only transcript of the trial certified to this court is a partial transcript, and, although the exhibits are referred to throughout, nowhere in the partial transcript can we find a statement by the court that the joint exhibits were admitted into evidence. Consequently, the joint trial exhibits are not part of the record on appeal, and the following recitation of facts is based upon the stipulations of counsel and a partial record bereft of the exhibits.

On May 9, 1989, the Woodlawn Council approved the recommendation of the mayor to employ Dillingham as a "temporary" police officer starting on May 12, 1989. He was hired following the suspension of a sergeant in the Woodlawn Police Department after the sergeant was charged with dereliction of duty and drug abuse.

Dillingham was evaluated using the department's "Recruit Evaluation Report Probationary Forms" for the months May through November 1989, and January through April 1990. Dillingham never scored below the level designated as "Meets Duty Requirements" on any of these forms, and on the majority of the forms he scored at the level "Exceeds Duty Requirements."

The sergeant whose suspension prompted Dillingham's hiring was found guilty of dereliction of duty and resigned effective November 13, 1989.

The mayor of Woodlawn appointed Dillingham to the vacancy created by the sergeant's resignation on December 14, 1989, to be effective December 20, 1989, and subject to the confirmation of the village council. Apparently the village council met on January 9, 1990, at which time Dillingham's appointment was approved.

Dillingham testified at trial that it was his impression that at this point his probationary period was over and that he had been permanently appointed as a police officer. He testified that this impression was based on representations made to him by the police chief that the police chief would recommend that the time he had worked as a temporary officer be counted as probationary time. Dillingham testified that he was later told by the chief of police that this recommendation had been rejected. According to Dillingham, it was not until

February 1990 that he learned at a supervisor's meeting that he was still considered on probation.

Dillingham testified that between January 9, 1990, and July 9, 1990, he was counseled on "a few occasions" with respect to areas of work which his supervisors found unsatisfactory.

Dillingham testified that near the end of his tenure with the police department he was informed by the police chief that he had not successfully completed his probationary period, but was given no specifics regarding this conclusion.

At the village council meeting of July 10, 1990, the mayor recommended that Dillingham not be approved to pass his six months' probation. Dillingham's record of service as evidenced by his personnel file and his Recruit Evaluation Report Probationary Forms was not transmitted to council, nor were its contents made known to them. Two members of council voted to approve the mayor's recommendation, three members voted to reject it.

The mayor on July 16, 1990, gave Dillingham written notice that he had not successfully completed his six-month probationary period and that his employment was terminated as of July 9, 1990.

## II

In his first assignment of error, Dillingham asserts that the trial court committed error when it concluded that his status was that of a temporary employee from May 12, 1989, until January 9, 1990. Essentially, Dillingham argues that the law does not provide authority for the village to hire a temporary police officer, and that the title "temporary" given to his employment meant only that it was conditional on the disciplined sergeant not returning. Once it became clear in October 1989 that the sergeant would not return, Dillingham argues, his service became, from the beginning, probationary, so that when the mayor appointed him as a patrol officer on December 20, 1989, he had already served his six-month probationary period and the appointment was, therefore, final.

As noted previously, the transcript before us is only a partial transcript and does not include the admission into evidence of the joint trial exhibits. Hence, we have not been presented with the complete record before the trial court. It is well established that error will not be presumed, but must appear affirmatively on the record. Moreover, it is the appellant's burden to show that error has occurred; otherwise, a presumption of validity and regularity attaches to the proceedings below. In addition, App.R. 9(B) provides, in pertinent part:

"If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, he shall

include in the record a transcript of all evidence relevant to such findings or conclusion."

Because the appellant has not presented us with a complete record of all evidence relevant to his status upon being hired by the village, we hold that he is foreclosed from challenging the factual basis for the trial court's conclusion that he was on "temporary" status at the time of his hire until December 20, 1989.

The only basis upon which he is left to challenge this determination is upon the purely legal basis that a village has no authority to hire a "temporary" police officer. This argument avails him little, however, because, even if correct, the fact that the village had acted *ultra vires* in hiring him on a "temporary" basis would not necessitate that his original employment be considered probationary.

We hold, moreover, that a village does have the authority to hire "temporary" policemen under R.C. 737.16 and 737.17.

Dillingham's first assignment of error is, therefore, overruled.

### III

In his second assignment of error, Dillingham contends that the trial court erred when it concluded that the mayor had the power to remove him without the concurrence of the village council.

The trial court found, and the village does not contest, that Dillingham was appointed as a probationary police officer on January 9, 1990, and that he thereafter served his probationary employment period from January 9, 1990, to July 9, 1990. It is not disputed that, at the village council meeting of July 10, 1990, the mayor recommended that Dillingham not be finally appointed, and that a majority of the council, by a vote of three to two, rejected this recommendation. It is also not disputed that, at this council meeting, Dillingham's record of service as evidenced by his personnel file and evaluation forms was not put before the council. Nevertheless, the mayor proceeded to terminate Dillingham's employment.

R.C. 737.17 provides in pertinent part:

"All appointments made under Sections 737.15 and 737.16 * * * shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee."

The trial court found that the mayor had not complied with this statute when he failed to transmit to the village council the record of Dillingham's service. However, the trial court noted that Dillingham had not sought a mandamus order to require the mayor to transmit his record of service, but, rather, sought "reinstatement" to his previous employment, which he believed to be that of a permanent police officer of the village. The trial court then determined that, since R.C. 737.17 did not require that the mayor follow the recommendation of the council, the mayor could legally terminate Dillingham absent the concurrence of council.

In *Toth v. Elmwood Place* (1984), 20 Ohio App.3d 188, 20 OBR 232, 485 N.E.2d 735, we held, in the case of a village police officer laid off due to budgetary constraints, that the authority to employ and remove village employees was that of the village council alone under R.C. 731.10. R.C. 737.17 is the more specific statute, however, on the probationary and final appointment of police personnel and therefore we find that it governs the situation here. See *Bedinghaus v. Moscow* (1987), 41 Ohio Misc.2d 1, 536 N.E.2d 58.

The issue we must decide is whether the language in R.C. 737.17 that the mayor "may, with the concurrence of the legislative authority, remove or finally appoint the employee" means that the mayor lacks the authority to do either without the support of council. In *Harvey v. Brumback* (1960), 113 Ohio App. 45, 17 O.O.2d 45, 177 N.E.2d 70, the court, interpreting R.C. 737.17, held that a probationary employee's six-month probationary period expires automatically so that a mayor, by withholding final appointment, can achieve the employee's dismissal even though the majority of council favors his final employment, and despite the fact that the mayor has, as in the case *sub judice,* failed to transmit the record of his service to council at the end of his probationary period.

We disagree with the holding of *Brumback* and read R.C. 737.17 differently. We read the language that the mayor "may, with the concurrence of the legislative authority, remove or appoint the employee" to mean that the mayor may either remove or appoint the employee at the end of his probationary period, but that, in either case, he must gain the concurrence of council. To hold otherwise would render superfluous the statutory language that the mayor "may, *with the concurrence of council,* remove * * * the employee," see 1954 Atty. Gen. Ops. No. 4268, and would allow the mayor to *backdoor* the dismissal of an employee in a manner wholly outside the statutory framework.

Dillingham's second assignment of error is, therefore, found to be well taken. Our holding necessarily means that a police employee's probationary status does not automatically terminate at the end of the six-month period, but, rather, continues until the mayor and council concur on either removing or finally appointing him. Accord *State ex rel. Sullivan v. Middleburg Hts.* (1961), 114

Ohio App. 354, 18 O.O. 264, 174 N.E.2d 777 (probationary period continues until terminated); *Monroe v. Smith* (Jan. 28, 1985), Warren App. No. CA84–08–050, unreported 1985 WL 8152 (probationary status still intact six weeks after expiration of six-month period). Thus, in sustaining Dillingham's second assignment of error, we conclude that the trial court should have declared that he was entitled to reinstatement with back pay to his previous status as a probationary officer with the village, subject to any action properly taken in compliance with R.C. 737.17.

The judgment below is reversed and this matter remanded to the trial court for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and UTZ, J., concur.

HILDEBRANDT, J., dissents in part.

HILDEBRANDT, Judge, dissenting in part.

Although I concur with the majority's resolution of the first assignment of error, I dissent from the majority's holding on the second assignment of error and would follow *Harvey v. Brumback* (1960), 113 Ohio App. 45, 17 O.O.2d 45, 177 N.E.2d 70, for two reasons. First, the language in R.C. 737.17 that the mayor *"may,* with the concurrence of the legislative authority, remove or appoint the employee" (emphasis added) clearly gives to the mayor the discretion not to finally appoint a police employee even though the council may unanimously recommend it. If the mayor is thus empowered to unilaterally deny final appointment to a police employee, it only logically follows that he can effectuate the removal of a probationary police employee by simply failing to bestow final appointment. I believe this result is intended by R.C. 737.17 and is in accordance with the broad authority which the Ohio Supreme Court has recognized to be vested in village mayors when it comes to matters involving the police.

"For those [villages] which do not [establish their own form of government] and which elect to remain within the general framework of village government as provided by the general statutes, the General Assembly has established a simple form of government which in large measure revolves around the village mayor. As pointed out, he is, or at times may be, virtually a seventh member of council. That it was intended that the mayor exert a potent force in all police matters in a village is further evidenced by the provision in Section 737.18, Revised Code, that 'the marshall shall be the peace officer of a village and the executive head, *under the mayor,* of the police force.'" (Emphasis *sic.*) *State ex rel. DeMatteo v. Allen* (1960), 170 Ohio St. 375, 380, 11 O.O.2d 78, 81, 165 N.E.2d 644, 648.

Secondly, I believe that the interpretation given to R.C. 737.17 by the majority creates a potential for political deadlock. Under the majority's interpretation, should the mayor and the village council never concur on whether to remove or finally appoint Dillingham, he could remain a "probationary" police officer for as long as such an impasse exists, even years. Such a result renders meaningless the statutory six-month probationary period and could cause numerous practical difficulties for the village. Clearly the legislature, in passing R.C. 737.17, could not have intended such a result.

For the foregoing reasons, I would affirm the judgment below.