**Thomas GOLEM, Plaintiff,**

**v.**

**VILLAGE OF PUT–IN–BAY, et al., Defendant.**

**No. 3:00CV7740.**

United States District Court, N.D. Ohio, Western Division.

Aug. 30, 2002.

Paul W. Flowers, Cleveland, OH, W. Craig Bashein, Bashein & Bashein, Cleveland, OH, for Thomas Golden.

Mark D. Katz, Ulmer & Berne, Cleveland, OH, Mark E. Porter, Ulmer & Berne, Cleveland, OH, for Village of Put-In-Bay, Ohio, John W. Blatt.

## ORDER

CARR, District Judge.

Plaintiff Thomas Golem brings this action against Defendants Village of Put–In–Bay and Mayor John W. Blatt, claiming breach of contract, defamation, and a violation of plaintiff's civil rights. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Pending are defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment.

For the following reasons, defendants' motion shall be denied as to the breach of contract claim, the § 1983 claim for deprivation of a property interest under the Fourteenth Amendment, and the defamation claim. Defendants' motion shall be granted as to plaintiff's § 1983 claim for deprivation of a liberty interest under the Fourteenth Amendment. Plaintiff's motion shall be granted as to the breach of contract claim and the § 1983 claim for deprivation of a property interest under the Fourteenth Amendment. Plaintiff's motion shall be denied as to the defamation claim and his § 1983 claim for deprivation of a liberty interest under the Fourteenth Amendment.

## BACKGROUND

In May, 1999, plaintiff was hired by Put–In–Bay as a seasonal police officer. He was promoted to a year-round investigator in July, 1999. After approximately six months of probation, in January, 2000, plaintiff was told he would be hired on a permanent basis and he would have to quit his other job with the Bratenahl Police Department.

Before plaintiff was hired, Put–In–Bay adopted a Policy and Procedures Manual, which established obligations of employees and officials of Put–In–Bay. The Manual was approved by Mayor Blatt. Plaintiff alleges that he was led to believe his employment would be governed by and subject to the Manual.

In a letter dated July 9, 2000, and issued to Chief of Police James F. Lang, plaintiff

alleges that Mayor Blatt falsely accused plaintiff of abuse of power, theft of Put–In–Bay resources, and commission of an official lie. Plaintiff alleges that Mayor Blatt publicly announced these findings without providing plaintiff with a meaningful hearing or opportunity to be heard. Police Chief Lang terminated plaintiff approximately two days after receiving the letter.

Plaintiff asserts three counts in his complaint: 1) breach of contract for violating his rights under the Manual, thereby depriving him of wages and benefits, irreparably harming his career in law enforcement, and causing him to suffer anxiety, distress, and aggravation; 2) defamation for purposefully and maliciously disparaging plaintiff, thereby causing plaintiff humiliation, emotional distress, mental anguish, loss of career opportunities and earning capacity, and impairment of reputation; and 3) civil right violations for depriving plaintiff of his constitutionally protected property and liberty interests.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Breach of Contract

Plaintiff claims the parties entered into a binding contract through the employment manual. Plaintiff claims defendants breached the contract when they terminated him.

### A. Whether the Employment Manual Constitutes a Contract

Plaintiff claims that defendants violated rights and protections provided in the Manual when defendants terminated him

without following a specific disciplinary procedure.[1] Doc. 1 at ¶ 12. Plaintiff argues the Manual and his signing of an acknowledgment of the Manual demonstrate a meeting of the minds which bound all parties to the Manual's terms and conditions. Plaintiff notes that the Manual contains no disclaimers or other indication that the Manual does not create a contract or is merely a guide.

Defendants contend that the Manual does not create a contract. Defendants argue:

> Even a cursory review of the Manual reveals that its provision [sic] address only the internal procedures of the Department. . . . It is replete with references to *the Chief's authority* in handling disciplinary matters. In no way does it limit *the Mayor's authority* to act pursuant to the Revised Code. *Only where the Chief determines disciplinary action is necessary do the Manual provisions control.*

Doc. 15 at 11 (citation omitted).

Defendants further argue the Manual contains general statements which cannot create a contract.

■ In Ohio, the general rule is that employment relationships are at-will.

*Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 103–04, 483 N.E.2d 150 (1985). One exception to the employment-at-will doctrine arises when the facts and circumstances of the employment relationship create a contract that alters the at-will nature of the employment. *Id.*

■ For a personnel manual to alter an at-will employment relationship, there must be a meeting of the minds. *Bartlett v. Daniel Drake Mem'l Hosp.,* 75 Ohio App.3d 334, 338, 599 N.E.2d 403 (1991) ("While personnel manuals may be important in establishing the terms and conditions of employment, absent the necessary mutual assent or meeting of the minds by the employer and employee to establish employment-termination rights, handbooks or other supplementary manuals or materials merely constitute unilateral statements of company rules and regulations.") (citation omitted); *Brandenburger v. Hilti, Inc.,* 52 Ohio App.3d 21, 24–25, 556 N.E.2d 212 (1989) (" 'The parties must have a distinct and common intention which is communicated by each party to the other [party].' ") (citing *Cohen & Co. v. Messina,* 24 Ohio App.3d 22, 24, 492 N.E.2d 867 (1985)) (emphasis omitted).

---

1. The Manual provides:

> A clear cut written disciplinary policy will serve to promote fairness and equality in the Put–in–Bay Police Department, and will minimize potential misunderstanding among the employees in disciplinary matters. The Put–in–Bay Police Department believes that certain basis [sic] principles must consistently be applied in order to effectively and fairly correct unsatisfactory job behavior.
> The Put–in–Bay Police Department will advise all employees of the job behavior, the type of conduct expected, and the action to be taken for unacceptable behavior and required conduct. This will make the working conditions more favorable for all employees.

> Immediate attention will be taken on any and all infractions of this manual. All complaints will be in writing to the Chief of [sic] and forwarded to the Mayor and Council for recommendations for actions to be taken.
> Disciplinary action shall be applied consistently and any deviation from the procedures will be justified and documented. All action taken will be documented and placed in the personnel file for (1) year, then removed. Each separate action will be dealt with objectively and fairly.
> Disciplinary action shall be progressive in nature with the infraction, depending on the severity of the offense. Action to be taken can range from oral, written, suspension, or termination.
> Doc. 17 Ex. H at § 9–1.

■ Neither party points to a disputed issue of predicate fact. While defendants are correct in that an employer's general policy statements typically do not create a contract, the Manual in this case contains very specific requirements for employment and discipline. The Manual lists specific acts constituting minor infractions, intermediate infractions, and serious infractions, and specifies corresponding types of discipline. Doc. 17 Ex. H at 9–2. Similar provisions have been held to be contractual in nature. *See, e.g., Sowards v. Norbar, Inc.,* 78 Ohio App.3d 545, 551, 605 N.E.2d 468 (1992) ("Significantly, the language used in the handbook with respect to 'formal discipline' is both specific and mandatory, indicating that the formal discipline policy was intended to be more than a mere guideline for discipline.").

While the Manual allows the employer unilaterally to amend the Manual, the Manual does not disclaim the creation of a contract or state that it simply is a guide. Doc. 17 at Ex. H. The absence of such disclaimer manifests Put–In–Bay's intent to be bound by the Manual.

Police Chief Lang and Captain Beverly Adair acknowledged their understanding that the Manual was binding on Put–in–Bay. Doc. 17 Ex. D at 36, 39–40; Doc. 17 Ex. G at 11–12. Such testimony demonstrates Put–In–Bay's intent to be bound by the Manual. *See, e.g., Sowards,* 78 Ohio App.3d at 551, 605 N.E.2d 468 (Testimony by the company supervisor and company dispatcher that the company strictly adhered to the company handbook and expected employees to comply with it demon-

strated the company's intent to be bound by the handbook.).

Plaintiff signed an acknowledgment on May 17, 2000, stating:

I, Thomas Golem, have hereby received, read, and understand the Polices and Procedures of the Put–in–Bay Police Department. I fully understand that any violation of these rules may result in my dismissal from Put–in–Bay Police Department with disciplinary action by the Chief of Police, Mayor, and the Village Council of Put–in–Bay, Ottawa County, Ohio.

Doc. 17 Ex. I.

■ Such acknowledgment demonstrates plaintiff's intent to be bound by the Manual. *See, e.g., id.* at 551, 605 N.E.2d 468 (An employee's written acknowledgment stating he received a copy of an employee handbook showed that he agreed to be bound by the handbook rules and assented to its terms.); *Wagner v. Celebrezze,* 1998 WL 833,708, 1998 U.S.App. LEXIS 30136, at *20–21 (Nov. 20, 1998) (no evidence of a meeting of the minds because the plaintiff was not required to sign an acknowledgment stating he agreed to follow the personnel manual's rules) (citing *Brandenburger,* 52 Ohio App.3d 21, 556 N.E.2d 212).[2]

I find that the undisputed facts and the Manual demonstrate a meeting of the minds and therefore establish a binding contract between the parties.

---

**2.** Neither party argues a lack of or presence of consideration. Ohio courts have, however, "consistently found continued employment under an employment handbook to constitute adequate consideration to support an implied contract of employment." *Whistler v. Western Res. Care Servs.,* No. 00 C.A. 90, 2001 WL 1647282, 2001 Ohio App. LEXIS 5811, at 10 (Dec. 24, 2001) (citing *Hanly v. Riverside*

*Methodist Hosp. Found., Inc.,* 71 Ohio App.3d 778, 595 N.E.2d 429 (1991)); *see also Sowards v. Norbar, Inc.,* 78 Ohio App.3d 545, 551, 605 N.E.2d 468 (1992) ("Continued employment *after* the issuance of an employee handbook may provide adequate consideration to support an implied contract of employment based on the terms of the handbook.") (citations omitted).

## B. Conflict Between the Employment Manual and General State Law

Defendants alternatively argue that, even if the Manual created a contract, the Manual may not supersede Ohio law by establishing a procedure that conflicts with a state law of general application. Defendants argue that O.R.C. § 737.17 gives unilateral power to a village mayor to terminate a probationary employee. Mayor Blatt, they assert, thus had and simply exercised that power. Defendants contend that § 737.17 overrides any procedures that otherwise may be required by an employment manual.

Plaintiff claims that the Manual gives him a substantive right to progressive discipline by listing infractions and defining consequences according to the severity of the violation. Moreover, he asserts, "Defendants have cited no cases holding that the 'procedures' for terminating local police officers have been assigned by the [Ohio] Constitution to the exclusive authority of the General Assembly." Doc. 23 at 2. A village, plaintiff asserts, is entitled to provide its employees with greater protection than that afforded by the General Assembly. Plaintiff further contends that statutes precluding enforcement of local regulations are invalid unless a statewide issue is at stake.

■ The Ohio Constitution allows municipalities to "exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Const. art. XVIII, § 3. Appointment of officers within a city's police department is an exercise of local self-government under the Home Rule Amendment. *State ex rel. Hipp v. City of North Canton*, 75 Ohio St.3d 221, 224, 661 N.E.2d 1090 (1996) (citing *State ex rel. Regetz v. Cleveland Civ. Serv. Comm.*, 72 Ohio St.3d 167, 169, 648 N.E.2d 495 (1995)).

■ The Ohio Supreme Court has established a three-part test to determine whether a local regulation conflicts with a general law. *Ohio Ass'n of Private Detective Agencies v. City of North Olmsted*, 65 Ohio St.3d 242, 244–45, 602 N.E.2d 1147 (1992). A court must determine whether: "(1) the challenged ordinance involves the exercise of powers of local self-government or police regulation, (2) the state statute is a general or special law, and (3) there is a conflict between the ordinance and state law." *City of Fairview Park v. Barefoot Grass Lawn Serv., Inc.*, 115 Ohio App.3d 306, 310, 685 N.E.2d 300 (1996) (citing *Ohio Ass'n of Private Detective Agencies*, 65 Ohio St.3d at 244–45, 602 N.E.2d 1147). When the municipal regulation and the general law can be harmonized, the court should do so. *Northern Ohio Patrolmen's Benevolent Ass'n v. City of Parma*, 61 Ohio St.2d 375, 377, 402 N.E.2d 519 (1980) (citing *Coshocton v. Saba*, 55 Ohio App. 40, 43, 8 N.E.2d 572 (1936)). If the regulation and general law cannot, however, be harmonized, the general law controls procedural matters, and the municipal regulation governs substantive local self-governmental matters. *City of Warren v. Hicks*, 124 Ohio App.3d 621, 626, 707 N.E.2d 15 (1997) (citing *Northern Ohio Patrolmen's Benevolent Ass'n*, 61 Ohio St.2d at 377, 383, 402 N.E.2d 519).

■ The parties do not dispute whether the Manual involves the exercise of powers of local self-government or police regulation or whether § 737.17 is a general law. The parties instead focus on whether the Manual and § 737.17 conflict. To determine whether a conflict exists, the test is whether the Manual permits that which § 737.17 prohibits, and whether the Manual forbids that which § 737.17 permits. *Fondessy Enter., Inc. v. City of Oregon*, 23 Ohio St.3d 213, 217, 492 N.E.2d 797 (1986)

(citing *Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. 519 (1923)).

O.R.C. § 737.17 provides:

All appointments made under sections 737.15 and 737.16 of the Revised Code [the provisions for appointment of village marshals, deputy marshals, police officers, night guards, and special police officers] shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. *At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.*

(Emphasis added).

The Manual provides that discipline must be progressive and that:

[t]he Chief shall, with the approval of the Mayor and the Village Council, have the power to suspend a member of the police department for just cause and shall file charges with the Village Council for permanent dismissal, if the facts justify the same. When the facts do not justify suspension or dismissal, he/she is authorized to take disciplinary measures—oral reprimand or written reprimand.

Doc. 17 Ex. H at § 2–2–1(k).

These two provisions are not in conflict and can be harmonized. The Manual does not distinguish between probationary and permanent employees,[3] and under the Manual the Chief of Police thus may initiate removal of a probationary employee with the village council.

The parties do not agree, however, on whether § 737.17 requires the Mayor to gain the Council's concurrence prior to removing a probationary employee or whether the Mayor has unilateral authority to terminate a probationary employee. Defendants urge me to follow *Scarpelli v. Village of Put–In–Bay,* 1995 WL 386462, No. OT–94–037, 1995 Ohio App. LEXIS 2731, at *6–8 (June 30, 1995), which held that, under § 737.17, a mayor has the unilateral power to terminate an employee who has completed his or her probationary period. The court held that a mayor does not need to obtain legislative concurrence for termination but must obtain approval for appointment. *Id.* at *7. The court stated, "If we interpret the statute as providing that council must concur with the mayor's decision to discharge the officer, their discord would tie the mayor's hand regarding control of the police force." *Id.* at *8.

Plaintiff urges me to follow *Dillingham v. Village of Woodlawn,* 86 Ohio App.3d 54, 59, 619 N.E.2d 1152 (1993), which held that a mayor may not remove or appoint an employee at the end of his or her probationary period without the concurrence of the village council. The court stated, "To hold otherwise would render superfluous the statutory language that the mayor

---

**3.** Testimony by Police Chief Lang provides:

Question: Turning to 9–1, do you see any statement to suggest that this disciplinary policy does not apply to all employees of the Village of Put–In–Bay Police Department?

Answer: You're right.

Question: Applies to all employees, correct?

Answer: Yes.

Question: Whether they're probationary or not, correct?

Answer: That's correct.

. . . . .

Question: So we can agree, regardless of the classification that you call Officer Golem, he was entitled to the Village to follow the rules set forth in the disciplinary policy under Section 9?

Answer: That's correct.

Doc. 17 Ex. D at 39–40.

'may, *with the concurrence of council,* remove ... the employee,'... and would allow the mayor to *backdoor* the dismissal of an employee in a manner wholly outside the statutory framework." *Id.* (citation omitted); *see also Wells v. Village of Couth Bloomfield,* No. 96 CA 22, 1996 Ohio App. LEXIS 4899, at *4 (Nov. 4, 1996) ("The statute states that the concurrence of the village legislative authority is necessary to remove an employee at the end of the employee's probationary period.").

I find *Dillingham* to be more persuasive. If the Mayor has the power unilaterally to terminate an employee at the end of the probationary period without council's concurrence, the statutory language "with the concurrence of the legislative authority" would be unnecessary. The court's reading of § 737.17 in *Scarpelli* effectively nullifies this language. *See, e.g., Walker v. Bain,* 257 F.3d 660, 667 (6th Cir.2001) ("Every word in the statute is presumed to have meaning, and we must give effect to all the words to avoid an interpretation which would render words superfluous or redundant.") (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); *Menuskin v. Williams,* 145 F.3d 755, 768 (6th Cir.1998)).

I am not unmindful of my duty to look to Ohio appellate decisions when the Ohio Supreme Court has not spoken on an issue. *Northland Ins. Co. v. Guardsman Prods., Inc.,* 141 F.3d 612, 617 (6th Cir. 1998) ("If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). However, I believe the Ohio Supreme Court would not engage in a reading of § 737.17 that would render statutory language superfluous. *East Ohio Gas Co. v. Public Utilities Comm'n of Ohio,* 39 Ohio St.3d 295, 299, 530 N.E.2d 875 (1988) ("[W]ords in statutes should not be construed to be redundant, nor should any words be ignored.") (citation omitted). I conclude that § 737.17 required Mayor Blatt to obtain the concurrence of the Put–In–Bay Council before plaintiff could be terminated.

Both the Manual and § 737.17 thus require concurrence of the Put–In–Bay Council to initiate removal of a probationary employee. Read together, the Manual and § 737.17 do not conflict because § 737.17 does not give the Mayor sole authority to remove a probationary employee during any time period. Both the Manual and § 737.17 provide that the Mayor and the Chief of Police must gain the Put–In–Bay Council's concurrence to terminate a probationary employee.

Under § 737.17, the Mayor may have the power to initiate termination of a probationary employee at the end of probation, but the Mayor does not have the unilateral power to terminate the employee. The fact that the Manual allows the *Chief of Police* to initiate removal of a probationary employee does not conflict with the *Mayor*'s power. Any argument that the Manual conflicts with the Mayor's power by granting power to initiate removal to the Police Chief is not well-taken because the text of § 737.17 does not preclude the exercise of such power by the Police Chief. Both the Chief of Police and the Mayor simply have similar powers, and nothing in § 737.17 requires a finding that the village's allocation of authority in this manner is not lawful.

The Manual does not conflict with a general law, and thus is not void.

## C. Whether the Manual Was Breached

As stated, the Manual required progressive discipline and mandated that the Chief of Police initiate termination proceedings with the Put–In–Bay Council. Doc. 17 Ex. H at § 2–2–1(k); 9–1.

Testimony by Police Chief Lang provides:

Question: Do you know, in the case of Tom Golem, whether or not charges were filed with village council for permanent dismissal?

Answer: I don't know.

Question: Were you instructed to fire Officer Golem?

Answer: Yes.

Question: By the Mayor?

Answer: Yes.

Question: Had you not received such an instruction, was it your intent to terminate him?

Answer: No.

Doc. 17 Ex. D at 11–12.

Testimony by Police Chief Lang further provides:

Question: So we can agree, regardless of the classification that you call Officer Golem, he was entitled to the Village to follow the rules set forth in the disciplinary policy under Section 9?

Answer: That's correct.

Question: And we can agree, based upon your feelings in this case, that they were not followed, correct?

Answer: Yes.

Doc. 17 Ex. D at 39–40.

Based on the undisputed facts that Police Chief Lang never initiated removal of plaintiff with the Put–In–Bay Council and did not engage in progressive discipline, defendants breached their contract with plaintiff.

Plaintiff's motion for summary judgment shall be granted as to plaintiff's breach of contract claim.

## II. Defamation

Plaintiff claims that Mayor Blatt maliciously disparaged and maligned plaintiff by falsely accusing him of leaving his post, engaging in sexual conduct with a co-worker while on duty, violating his job responsibilities, committing theft of Put–In–Bay resources, engaging in abuse of power, and committing an official lie.[4] Plaintiff contends that Mayor Blatt knew or should have known that such statements would be disseminated publicly.

Defendants argue that plaintiff's defamation claim must fail because Mayor Blatt is entitled to a qualified privilege and the evidence does not suggest Mayor Blatt acted with actual malice. Defendants also contend that Ohio has not expressly adopted the forced republication doctrine.

---

4. Plaintiff relies on the following statements included in a letter written to Police Chief Lang by Mayor Blatt:

You will recall the morning I caught Tom Golem sleeping on duty. You investigated and guaranteed that I would never do so again.

Today, I found what appears to be even worse. Two officers together in the barracks during a period they were to be on duty. Permitting an experienced officer to check out a prisoner. Sending the same inexperienced officer to do radar checks without training.

You have the authority to assign and fire. I have the authority to hire and promote. I will never approve a promotion for Tom Golem and will never approve making him a full time officer after this recent abuse of power. This theft of village resources. This official lie.

I request that you immediately terminate Tom Golem's employment (at least terminate the full time employment and the shift leadership) and that you appropriately deal with Ms Gast.

Doc. 17 at Ex. M.

To establish a defamation claim, Ohio law requires a plaintiff to prove, by clear and convincing evidence, that the defendant made a false, defamatory statement pertaining to the plaintiff and that the defendant was at least negligent in publishing it. *Dorricott v. Fairhill Ctr. for Aging*, 2 F.Supp.2d 982, 993 (N.D.Ohio 1998) (citing *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St.3d 176, 178–80, 512 N.E.2d 979 (1987)). A plaintiff must prove five elements: (1) falsity; (2) the defendant's responsibility for publication to a third person; (3) a tendency to harm plaintiff's reputation by lowering the community's perception of the plaintiff or inducing others to refrain from associating with him; (4) fault; and (5) injury. *Id.* (citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 331 N.E.2d 713 (1975); *North Coast Cable L.P. v. Hanneman*, 98 Ohio App.3d 434, 442, 648 N.E.2d 875 (1994)). The only element in dispute is that of publication.

Plaintiff argues that Mayor Blatt's alleged false accusations were published because Police Chief Lang received the letter and placed it in plaintiff's personnel file, which is a public record. Plaintiff argues he was forced to disclose Mayor Blatt's accusations to prospective employers. Plaintiff relies on the forced republication doctrine to support this argument. Plaintiff also contends that Put–In–Bay provided his current employer with documents accusing him of sleeping on duty.

Defendants contend that plaintiff is not entitled to summary judgment because Ohio has not expressly adopted the forced republication doctrine in defamation claims, and this court should not apply the forced republication doctrine. Defendants do not address plaintiff's contention that they provided the information containing the false accusations to plaintiff's current employer.

The forced republication doctrine "provides for proof of publication where a defamed person is forced to republish defamatory statements to a third party, such as a person who is required to state the reason for leaving his or her former employer when completing an application for employment." *Schacht v. Ameritrust Co.*, 1994 WL 86229, No. 64782, 1994 Ohio App. LEXIS 1125, at *8 n. 3 (Mar. 17, 1994) (citing *Atkinson v. Stop–N–Go Foods, Inc.*, 83 Ohio App.3d 132, 614 N.E.2d 784 (1992)). The doctrine has not, however, expressly been recognized under Ohio law. *Id.*

While defendants are correct in that Ohio has not expressly adopted the forced republication doctrine, I need not address application of that doctrine in this context because plaintiff has put forth sufficient evidence that Put–In–Bay provided the defamatory statements to his current employer.

Plaintiff alleges that, after he applied for a promotion with his current employer, his current employer requested plaintiff's disciplinary record from Police Chief Lang. His current employer received documents which included the accusation that plaintiff was " 'seen by Mayor sleeping on duty.' " Doc. 17 Ex. A at ¶ 24 (citing Doc. 17 Ex. W). His current employer also received plaintiff's termination notice which accused him of sleeping on duty. Doc. 17 Ex. A at ¶ 24 (citing Doc. 17 Ex. S). Such allegations sufficiently establish publication to a third party.

Defendants argue, in the alternative, that they are entitled to summary judgment because Mayor Blatt is entitled to a qualified privilege. They contend that the letter he wrote to Police Chief Lang was the result of an official police investigation into whether plaintiff slept while on duty. Defendants contend that plaintiff has no evidence that Mayor Blatt acted with ill will, spite, grudge, or some other ulterior motive.

Plaintiff does not dispute defendants' assertion of qualified privilege but instead argues that Mayor Blatt acted with actual malice. Doc. 21 at 14 ("Reasonable minds will have to conclude in this case that Mayor Blatt accused Plaintiff of 'abuse of power', 'theft of village resources', and committing an 'official lie', either knowing that the charges were false or with reckless disregard for their veracity.").

A qualified privilege protects a defendant in a defamation claim "where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person ... in the performance of such duty." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995). Communications by an employer to a prospective employer regarding reasons for a former employee's discharge are included in a qualified privilege. *Rinehart v. Maiorano,* 76 Ohio App.3d 413, 421, 602 N.E.2d 340 (1991).

A plaintiff only can defeat a qualified privilege with a showing, by clear and convincing evidence, that the defendant's communication was made with actual malice. *Id.* at 11, 602 N.E.2d 340 (citing *Jacobs v. Frank,* 60 Ohio St.3d 111, 114, 573 N.E.2d 609 (1991)). Actual malice is defined as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* at syllabus.

Plaintiff contends that Mayor Blatt acted with actual malice because Mayor Blatt accused plaintiff of abuse of power, theft of Put–In–Bay resources, and commission of an official lie with knowledge that these accusations were false or with reckless disregard for their veracity. Plaintiff contends Mayor Blatt admitted in deposition that he did not know of anyone who observed plaintiff sleeping while working.

Plaintiff also asserts that Mayor Blatt does not have any and does not know of anyone else with first-hand knowledge of the accusations.

Defendants argue that plaintiff cannot overcome Mayor Blatt's qualified privilege because Mayor Blatt's letter to Police Chief Lang was the result of an official police investigation. Defendants contend that plaintiff cannot prove Mayor Blatt knew the letter's statements were false at the time they were made or made the statements with utter disregard for the truth. Defendants argue that it is irrelevant that no one actually saw plaintiff sleeping. Defendants contend:

Having caught Plaintiff in the latter's office with the lights off, his feet up on the desk and his eyes closed on July 2, Mayor Blatt's conclusion, that Plaintiff's absence from his reported location meant he was sleeping on duty on July 9, was a rational one. More importantly, Mayor Blatt terminated Plaintiff after conducting his own investigation.

Doc. 22 at 7–8.

Based on the evidence presented by the parties, a genuine issue of material facts remains as to whether Mayor Blatt acted with actual malice. Reasonable minds could conclude that Mayor Blatt did not act with the knowledge that his statements in the letter were false or with reckless disregard for their truth or falsity. They could conclude that Mayor Blatt truly believed that plaintiff was sleeping while on duty. Reasonable minds also could conclude that Mayor Blatt acted with actual malice because there is no evidence to suggest that either he or anyone else actually saw plaintiff sleeping on duty.

I thus cannot grant summary judgment to defendants based on qualified privilege, nor can I grant summary judgment to plaintiff based on a showing of actual mal-

ice. Both parties' motions on the defamation claim shall, therefore, be denied.

### III. Section 1983

Plaintiff claims that defendants violated his civil rights, and they are liable under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To succeed on a § 1983 claim, a plaintiff is required to show a defendant: 1) acted under color of state law[5] and 2) deprived the plaintiff of his or her rights under the United States Constitution. *Upsher v. Grosse Pointe Pub. Sch. Sys.,* 285 F.3d 448, 452 (6th Cir.2002) (citations omitted). A plaintiff may prove that he or she was deprived of a right guaranteed by the United States Constitution or its laws by proving he or she was deprived of a liberty or property interest without due process of law. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This analysis requires a plaintiff first to prove he or she had a property or liberty interest, and then to prove he or she was deprived of that property or liberty interest.

Plaintiff contends defendants deprived him of a property interest in his employ-ment and a protected interest in his reputation without procedural due process. Doc. 1 at ¶ 25.

### A. Deprivation of a Property Interest

Plaintiff contends the Manual elevated his job status above an employment at-will status and therefore created a property interest in his employment. Plaintiff argues that any probationary status is irrelevant because the Manual provided the same progressive disciplinary procedures for both probationary and permanent employees.

Defendants argue that plaintiff does not have a property interest in his position under Ohio law. Defendants contend that plaintiff was a probationary employee, without a property interest, because he was not removed or permanently appointed following termination of his probationary employment.

Plaintiff must prove that he was deprived of a property interest in his employment. The Supreme Court has stated that a property interest in public employment does not derive from the Constitution but is "created and [its] dimension[ ][is] defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701); *Bailey v. Floyd Cty. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir.1997). I therefore must look to Ohio law and any other "rules or understandings" such as the parties' contract to determine whether plaintiff had a property interest in his employment.

Based on my determination that the Village employment Manual created contractual obligations toward the plaintiff, I find that plaintiff had a property interest in his

5. Neither party disputes that defendants acted under color of state law.

employment. Defendants make much of the fact that plaintiff's probationary period had expired when he was terminated and that he never was formally appointed. *See Curby v. Archon,* 216 F.3d 549, 553 (6th Cir.2000) ("Here, after Curby finished his probationary period, the Village did not finally appoint him as a deputy marshal. Curby thus had no reasonable expectation of continued employment. Without such a property interest, the Village did not owe him a hearing before making its determination.") (citation omitted). Defendants also point out that §§ 737.17 and 737.17 cannot confer a property interest in employment. *See Matulin v. Village of Lodi,* 862 F.2d 609, 616 (6th Cir.1988) ("Courts in Ohio have held that a probationary employee who completes a probationary term but is not finally appointed has no reasonable expectation of continued employment.") (citing *Harvey v. Brumback,* 113 Ohio App. 45, 177 N.E.2d 70 (1960)).

Plaintiff's property interest stemmed, however, from the Manual, to which both parties agreed. *See Ludwig v. Board of Trustees of Ferris State Univ.,* 123 F.3d 404, 409 (6th Cir.1997) ("A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances.") (citing *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bailey,* 106 F.3d at 141; *Woolsey v. Hunt,* 932 F.2d 555, 564 (6th Cir.1991)); *Woodbran Realty Corp. v. Orange Village,* 67 Ohio App.3d 207, 214, 586 N.E.2d 248 (1990) ("Well-established patterns or mutual understandings in the nature of an implied contract may be the basis of a property interest.") (citing *Bara v. Aurora Civil Service Comm.,* 580 F.Supp. 212 (N.D.Ill.1983)); *see also Gratsch v. Hamilton County,* No. 00–3398, 12 Fed.Appx. 193, 2001 U.S.App. LEXIS 7231, at *36–37 (Apr. 3, 2001) ("If the two parties had a mutual understanding Gratsch had the right to continue working as a special deputy absent a pre-termination hearing, then he was deprived of procedural due process when his commission was terminated without a hearing.").

The undisputed facts establish that plaintiff was terminated without a hearing. *See supra* Section I.C. Because the parties agree that plaintiff was terminated without any sort of hearing, and because I find that plaintiff had a property interest in his employment based on the parties' agreement to be bound by the Manual's provisions, I find that plaintiff was deprived of a property interest without due process of law.

Plaintiff's motion for summary judgment shall be, therefore, granted on the § 1983 claim for deprivation of his property rights under the United States Constitution.

### B. Deprivation of a Liberty Interest in Reputation

■ Plaintiff claims defendants deprived him of a liberty interest in his reputation. Plaintiff contends, "Mayor Blatt fired Plaintiff amidst charges of 'theft of village resources' and committing an 'official lie.' ... These patently false allegations quickly became part of the public record and have been conveyed to at least one other law enforcement department." Doc. 17 at 19 (citation omitted). Plaintiff claims he was entitled to a name-clearing hearing, which the Village did not provide to him.

Defendants argue that if there is no defamation claim because of qualified privilege, a claim for infringement of a liberty interest also cannot survive.

■ The Fourteenth Amendment to the United States Constitution protects liberty interests such as a person's reputation, good name, honor, and integrity. *Chilingirian v. Boris,* 882 F.2d 200, 205 (6th Cir.1989). Plaintiff clearly possessed a liberty interest in his reputation.

A plaintiff cannot establish a due process violation, however, through defamation alone. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir.2002) (citing *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). A "nontenured employee [who] shows that he [or she] has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his [or her] employment" is entitled to an opportunity to clear his or her name. *Chilingirian*, 882 F.2d at 205.

The Sixth Circuit requires a plaintiff to establish five elements to demonstrate deprivation of a liberty interest. "First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment." *Brown v. City of Niota*, 214 F.3d 718, 722 (6th Cir. 2000) (citing *Ludwig*, 123 F.3d at 410). "Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Brown*, 214 F.3d at 722–23 (citing *Ludwig*, 123 F.3d at 410). A plaintiff must prove the employer made a statement that might seriously damage the employee's reputation in the community or might impose a stigma precluding the employee from other employment. *Ludwig*, 123 F.3d at 410 (citing *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). A plaintiff must show a "moral stigma such as immorality or dishonesty to show a deprivation of liberty." *Ludwig*, 123 F.3d at 410 (citing *Roth*, 408 U.S. at 573, 92 S.Ct. 2701). "Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary." *Brown*, 214 F.3d at 723 (citing *Ludwig*, 123 F.3d at 410).

Before a plaintiff may assert deprivation of a liberty interest, he or she must, however, show that he or she requested a name-clearing hearing and was denied a hearing. *Quinn*, 293 F.3d at 322 (citing *Brown*, 214 F.3d at 723; *Ludwig*, 123 F.3d at 410–11). There is no assertion in the complaint or evidence in the record that plaintiff asked for a name-clearing hearing. Absent such a request, plaintiff cannot prevail on this claim. *Id.*

## CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Defendants' motion for summary judgment be, and hereby is, denied, and plaintiff's motion for summary judgment be, and hereby is, granted as to the breach of contract claim and the § 1983 claim for deprivation of a property interest;

2. Defendants' motion for summary judgment be, and hereby is, denied, and plaintiff's motion for summary judgment be, and hereby is, denied as to the defamation claim; and

3. Defendants' motion for summary judgment be, and hereby is, granted, and plaintiff's motion for summary judgment be, and hereby is, denied as to the § 1983 claim for deprivation of a liberty interest.

4. A telephone scheduling conference is set for September 16, 2002 at 9:00 a.m.

**So ordered.**